1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

9
10
11

| | |
|---|---|
| BENJAMIN C. OYARZO and NICHOLAS HART, | Case No.  1:11-cv-01271-SAB |
| Plaintiffs, | ORDER ON PARTIES' MOTIONS IN LIMINE |
| v. | (ECF Nos. 153, 154, 163, 164) |
| TUOLUMNE FIRE DISTRICT, KENNETH HOCKETT, and TONEY POWERS, | |
| Defendants. | |

12
13
14
15
16
17
18
19

### I.

### INTRODUCTION

20
21       Following resolution of Defendants' motion for summary judgment this action is

22  proceeding against Defendant Tuolumne Fire District ("TFD") on Plaintiff Oyarzo's claim for

23  violation of the Fair Labor Standards Act ("FLSA") by failing to compensate him for all hours

24  worked; and on Plaintiff Hart's claims against Defendants TFD, Hockett and Powers for

25  violation of the First Amendment for his support of Plaintiff Oyarzo, and against Defendant TFD

26  for retaliation in violation of California Labor Code section 6310 and violation of the

27
28

1  Firefighter's Procedural Bill of Rights ("FPBR").[1]  This action is set for trial on December 3,

2  2013.

3       On September 24, 2013, Defendants and Plaintiffs each filed motions in limine.  (ECF

4  Nos. 153, 154.)  A motion in limine hearing was held on October 15, 2013.  At the hearing,

5  Counsel Shannon Siebert and Joseph Bautista appeared for Plaintiffs and counsel J. Anthony

6  Abbott and Johanne Medina appeared for Defendants.

7                                          **II.**

8                                **LEGAL STANDARD**

9       A party may use a motion in limine to exclude inadmissible or prejudicial evidence

10 before it is actually introduced at trial.  See Luce v. United States, 469 U.S. 38, 40 n.2 (1984).

11 "[A] motion in limine is an important tool available to the trial judge to ensure the expeditious

12 and evenhanded management of the trial proceedings."  Jonasson v. Lutheran Child and Family

13 Services, 115 F.3d 436,440 (7th Cir. 1997).  A motion in limine allows the parties to resolve

14 evidentiary disputes before trial and avoids potentially prejudicial evidence being presented in

15 front of the jury, thereby relieving the trial judge from the formidable task of neutralizing the

16 taint of prejudicial evidence.  Brodit v. Cambra, 350 F.3d 985, 1004-05 (9th Cir. 2003).

17      Motions in limine that exclude broad categories of evidence are disfavored, and such

18 issues are better dealt with during trial as the admissibility of evidence arises.  Sperberg v.

19 Goodyear Tire & Rubber, Co., 519 F.2d 708, 712 (6th Cir. 1975).  Additionally, some

20 evidentiary issues are not accurately and efficiently evaluated by the trial judge in a motion in

21 limine and it is necessary to defer ruling until during trial when the trial judge can better estimate

22 the impact of the evidence on the jury.  Jonasson, 115 F.3d at 440.

23                                         **III.**

24                                   **DISCUSSION**

25 **A.     Plaintiffs' Motions in Limine**

26      Plaintiffs bring twelve motions in limine to exclude evidence at the trial of this matter.

27

28 _____

[1] Plaintiff Oyarzo has abandoned his claim against Defendant TFD for violation of the FPBR.  (Joint Pretrial Statement 18, ECF No. 140.)

1        1.      Plaintiffs' Motion in Limine No. 1

2        Plaintiffs' motion in limine no. 1 seeks to exclude non-party witnesses from the

3   courtroom.   Defendants respond that they intend to have each named defendant and a

4   representative of Defendant TFD at trial each day, and request that the representative from TFD

5   be allowed to alternate if necessary should the designated representative be unavailable due to

6   work obligations or conflicts in their schedule.

7        Federal Rule of Evidence 615 provides that "[a]t a party's request, the court must order

8   witnesses excluded so that they cannot hear other witnesses' testimony."   The rule does not

9   authorize excluding a designated representative for a party that is not a natural person.   Fed. R.

10  Evid. 615(b).   **Accordingly, Plaintiff's motion in limine no. 1 is GRANTED.**   Defendant TFD

11  shall be required to designate a representative and should that representative be unavailable, the

12  Court will allow Defendant TFD, upon a showing that the designated representative is justifiably

13  unavailable, to have an alternate representative designated.

14       2.      Plaintiffs' Motion in Limine No. 2

15       Plaintiffs' motion in limine no. 2 seeks to exclude evidence that Plaintiffs received

16  income from collateral sources.   Plaintiffs claim that Plaintiff Oyarzo's receipt of unemployment

17  benefits and Plaintiff Hart's receipt of unemployment and workers compensation benefits are

18  collateral sources and may not be introduced into evidence.   Defendants respond that they do not

19  intend to introduce any evidence of unemployment or workers compensation benefits, however

20  do intend to introduce treatment and examination reports.

21       **Plaintiff's motion in limine no. 2 is GRANTED and evidence of unemployment and**

22  **workers compensation payments shall be excluded at trial.**   However, Defendants shall be

23  allowed to introduce medical evidence derived from the workers compensation claim as relevant

24  to the claims proceeding here.

25       3.      Plaintiffs' Motion in Limine No. 3

26       Plaintiffs' motion in limine no. 3 seeks to exclude evidence of each Plaintiffs' application

27  to the California Employment Development Department ("EDD").   Plaintiffs argue that

28  Defendant TFD received the notices from the EDD and they are not confidential.

California Unemployment Insurance Code section 1094(a) provides that "the information obtained in the administration of this code is confidential, not open to the public, and shall be for the exclusive use and information of the director in discharge of his or her duties."  Further, the Code provides that "the information released to authorized entities pursuant to other provisions of the code shall not be admissible in evidence in any action or special proceeding, other than one arising out of the provisions of this code or one described in Section 1095."  Cal. Unempl. Ins. Code § 1094(b).

Plaintiffs filed this action which challenges their compensation and termination.  Under California law a waiver of a right may occur "(1) by an intentional relinquishment or (2) as 'the result of an act which, according to its natural import, is so inconsistent with an intent to enforce the right as to induce a reasonable belief that such right has been relinquished."  Crest Catering Co. v. Superior Court of Los Angeles County, 62 Cal.2d 274, 278 (1965) (quoting Rheem Mfg. Co. v. United States, 47 Cal.2d 621, 626 (1962)).  In this instance, Plaintiffs filed this action placing their termination and compensation at issue.  Filing this action challenging their termination is an act inconsistent with the intent to enforce the privacy right in Plaintiffs' unemployment claims.

Further, the Court notes that the evidence Plaintiffs seek to exclude is a notice that is designed to be provided to the employer by the Employment Development Department when an employee files a claim for unemployment benefits.  The Court finds that no privacy right exists in these documents.

**Plaintiffs' motion in limine to exclude their applications to the EDD based upon the right to privacy is DENIED.**

4.   Plaintiffs' Motions in Limine No. 4

Plaintiffs' motion in limine no. 4 seeks to exclude evidence of complaints against Plaintiff Oyarzo by other employees in 2010.  Defendants contend that the allegations are relevant to show that Plaintiff Oyarzo did not work the hours that he is claiming to have worked and to show his disillusionment with Defendant TFD and his motive for post-employment fabrication of his claims.  Additionally, Defendants contend that the complaints are relevant to

1    Plaintiff Hart's First Amendment claim to show that Plaintiff Hart did not claim the treatment of

2    Plaintiff Oyarzo was illegal, nor did he have a reasonable belief that the treatment was illegal,

3    and the speech was not a matter of public concern.  Defendants argue the complaints are relevant

4    to show that the issues involved were individual personnel disputes and grievances, internal

5    power struggles within the workplace, and disputes concerning management styles that are not

6    protected by the First Amendment.[2]

7         The Court finds that the evidence sought to be excluded in this instance is not accurately

8    and efficiently evaluated in a motion in limine and it is necessary to defer ruling until during

9    trial.  Jonasson, 115 F.3d at 440.  **Plaintiffs' motion in limine no. 4 is DENIED.**

10        5.    Plaintiffs' Motion in Limine No. 5

11        Plaintiffs' motion in limine no. 5 seeks to exclude evidence that Plaintiff Oyarzo or other

12   employees visited adult dating websites.  Defendants contend that the improper use of the work

13   computer goes to the substance of the complaints against Plaintiff Oyarzo.  Defendants argue this

14   evidence goes to the management style and misconduct of Plaintiff Oyarzo that was at the

15   substance of the complaints and will be used to show that Plaintiff Hart did not speak on a matter

16   of public concern.

17        "The court may exclude relevant evidence if its probative value is substantially

18   outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues,

19   misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

20   Fed. R. Evid. 403.  The Court finds that the risk of unfair prejudice and confusing the issues by

21   introducing evidence that Plaintiff Oyarzo or other employees visited adult dating websites

22   outweighs any potential relevance to the issues proceeding in this action.  **Accordingly,**

23   **Plaintiff's motion in limine no. 5 is GRANTED.**

24        6.    Plaintiffs' Motion in Limine No. 6

25        Plaintiffs' motion in limine no. 6 seeks to exclude evidence to support defenses that were

26   not pled by Defendants in their answer to the complaint.  Plaintiff contends that Defendants

---

27   [2] During the motion in limine hearing the parties argued whether the issue of Plaintiff Hart's motivation or belief is
     an issue to be decided by the Court or the trier of fact and the parties were ordered to submit further briefing.  The
28   Court will address this issue by separate order upon review of the further briefing.

1 raised for the first time in the motion for summary judgment the defenses of unclean hands,

2 equitable estoppel, and in pari delicto.  Additionally, at the pretrial conference on September 20,

3 2013, Defendants raised the issue of a defense based upon a managerial exemption for the first

4 time.  Plaintiffs contend that they will suffer prejudice because the issues were raised after

5 discovery in this action closed and therefore they were not allowed to conduct discovery on these

6 issues.

7       Defendants respond that Plaintiffs have had notice that they intended to introduce such

8 defenses and will not be prejudiced by the presentation of the defenses at trial.  Defendants state

9 that they only intend to introduce a jury instruction on the affirmative defense of estoppel and

10 Plaintiffs have received fair notice because from the beginning of discovery the issues that

11 Plaintiff Oyarzo was the Fire Chief, had responsibility for ensuring that all hours worked were

12 recorded, his responsibility for payroll, and that he did not record the hours he now claims to

13 have worked have been addressed in the written discovery and depositions that have been taken.

14       Federal Rule of Civil Procedure 8(b)(c)(1) provides that "[i]n responding to a pleading, a

15 party must affirmatively state any avoidance or affirmative defense. . . ."  In Owens v. Kaiser

16 Foundation Health Plan, Inc., 244 F.3d 708 (9th Cir. 2001), the Ninth Circuit recognized that the

17 requirement that defendants raise their affirmative offenses in their initial pleadings has been

18 liberalized.  Id. at 713.  "The key to determining the sufficiency of pleading an affirmative

19 defense is whether it gives plaintiff fair notice of the defense."  Simmons v. Navajo County,

20 Ariz., 609 F.3d 1011, 1023 (9th Cir. 2010) (citations omitted).

21       While Rule 8 requires that affirmative defenses be pled in the responsive pleading, the

22 court has discretion to allow an affirmative defense to be raised in a subsequent motion if it does

23 not prejudice the plaintiff.  Simmons, 609 F.3d at 1023 (allowing affirmative defense where facts

24 were alleged in motion to amend answer to place plaintiff on notice of the claimed defense).

25       **a.    Equitable Estoppel**

26       The Court has reviewed Defendants affirmative defenses set forth in the amended answer

27 filed April 12, 2013.  (ECF No. 60.)  The amended answer is devoid of any mention of the

28 defenses of unclean hands, equitable estoppel, and in pari delicto or facts to support such

defenses.  Defendants conceded at the hearing that neither these defenses, nor facts to support them, were included in their amended answer.[3]  While Defendants raised these issues in the motion for summary judgment and Plaintiffs did not object at that time, Defendants did not move to file an amended answer to correct this deficiency in the pleading.

During the motion in limine hearing, Defendants made an oral motion to amend their answer at this time to add the affirmative defense of estoppel.  "Rule 15(a) is very liberal and leave to amend 'shall be freely given when justice so requires.'"  Amerisource Bergen Corp. v. Dialysis West, Inc., 465 F.3d 946, 951 (9th Cir. 2006) (quoting Fed. R. Civ. P. 15(a)).  However, courts "need not grant leave to amend where the amendment:  (1) prejudices the opposing party; (2) is sought in bad faith; (3) produces an undue delay in the litigation; or (4) is futile."  Id.  The factor of "'[u]ndue delay by itself . . . is insufficient to justify denying a motion to amend.'"  Owens v. Kaiser Foundation Health Plan, Inc., 244 F.3d 708, 712 (9th Cir. 2001) (quoting Bowles v. Reade, 198 F.3d 752, 757-58 (9th Cir. 1999)).

In this instance, the Court finds that Plaintiff would be prejudiced by allowing Defendants to proceed on a theory of estoppel asserted this late in the action.  Discovery in this action closed on March 15, 2013.  (Amended Scheduling Order 1, ECF No. 42.)  Defendants raised the issue for the first time in their motions for summary judgment which were filed in April 2013, after the discovery cut-off date.  Allowing Defendants to amend their answer at this stage in the proceedings would require reopening discovery on this issue and would require the trial, currently set for December 3, 2013, to be vacated causing undue delay in the litigation.

---

[3]  Supreme Court decisions addressing the FLSA "have frequently emphasized the nonwaivable nature of an individual employee's right to a minimum wage and to overtime pay under the Act."  Barrentine v. Arkansas-Best Freight System, Inc., 450 U.S. 728, 740 (1981).  Thus, the Supreme Court has held that "FLSA rights cannot be abridged by contract or otherwise waived because this would 'nullify the purposes' of the statute and thwart the legislative policies it was designed to effectuate."  Barrentine, 450 U.S. at 740 (citations omitted).

In Forrester v. Roth's I.G.A. Foodliner, Inc., 646 F.2d 413, 414 (9th Cir. 1981), the Ninth Circuit declined to address the issue of whether estoppel is an affirmative defense to an action under the FLSA.  Forrester, 646 F.2d at 414.  The appellate court affirmed the granting of a motion for summary judgment on the basis that an employer who is aware that an employee is working uncompensated overtime "cannot stand idly by and allow an employee to perform overtime work without proper compensation, even if the employee does not make a claim for the overtime compensation."  Id.  However, the court also found that "[w]here an employer has no knowledge that an employee is engaging in overtime work and that employee fails to notify the employer or deliberately prevents the employer from acquiring knowledge of the overtime work, the employer's failure to pay for the overtime hours is not a violation of [Section] 207."  Id.

1       Additionally, since Defendants are seeking to amend the answer after the deadline

2 established by the scheduling order, granting the relief requested requires modification of the

3 scheduling order.  Modification of a scheduling order requires a showing of good cause, Fed. R.

4 Civ. P. 16(b), and good cause requires a showing of due diligence, Johnson v. Mammoth

5 Recreations, Inc., 975 F.2d 604, 609 (9th Cir. 1992).  If the party seeking to amend the

6 scheduling order fails to show due diligence the inquiry should end and the court should not

7 grant the motion to modify.  Zivkovic v. Southern California Edison, Co., 302 F.3d 1080, 1087

8 (9th Cir. 2002).  To allow a modification of the scheduling order without good cause would

9 render scheduling orders essentially meaningless, and directly interfere with courts' attempts to

10 manage their dockets and with the standard course of litigation in actions such as this.  Johnson,

11 975 F.2d at 610 ("A scheduling order is not a frivolous piece of paper, idly entered . . . ."

12 (internal quotations and citation omitted)).

13       Pursuant to the November 1, 2012 scheduling order, the motion to amend should have

14 been filed by March 15, 2013.  Defendants were aware of this affirmative defense in April 2013

15 when the motions for summary judgment were filed, but did not move to amend the answer until

16 the motion in limine hearing on October 15, 2013.  Defendants have failed to demonstrate due

17 diligence and the motion to amend the answer is denied.

18     **Plaintiff Oyarzo's motion in limine to preclude the affirmative defense of estoppel is**

19 **GRANTED**.

20     **b.**     **Plaintiff Oyarzo's position as management**

21       Plaintiff Oyarzo also seeks to exclude the defense that Plaintiff Oyarzo was management.

22 Defendants contend that they seek to introduce a "novel facts where Oyarzo acted for the

23 'employer' for the purposes of the FLSA."

24       To the extent that Defendants appear to be arguing a new exception to the FLSA they

25 have presented no legal authority for such an exception and the law is clear that the overtime

26 provisions of the FLSA cannot be waived by an employee.   Barrentine, 450 U.S. at 740.

27 **Plaintiff's motion in limine is GRANTED as the proposed "management exception" does**

28 **not exist under the FLSA.**  However, these rulings do not preclude Defendants from offering

1  evidence that Plaintiff Oyarzo did not inform them he was working overtime or of Plaintiff

2  Oyarzo's duties in respect to scheduling employees' shifts or processing payroll.

3            7.        Plaintiffs' Motion in Limine No. 7

4            Plaintiffs' motion in limine no. 7 seeks to exclude the introduction of evidence to support

5  defenses that do not exist as a matter of law.

6            a.        Plaintiff Oyarzo's Motion

7            Plaintiffs contend that Defendants intend to introduce evidence that Plaintiff Hart

8  intended to volunteer his time and that he is not entitled to paid due to his position in

9  management, and these are not defenses to a claim for unpaid wages under the FLSA.

10 Defendants respond that evidence that Plaintiff Oyarzo did not consider the activities he now

11 claims were not compensated to be compensable at the time that he engaged in them support

12 Defendant TFD's position.

13           **i.      Evidence that Plaintiff Oyarzo volunteered his services**

14           An employer is required to pay overtime when he "suffers" or "permits" an employee to

15 work in excess of 40 hours.  29 U.S.C. §§ 203(g), 207(a).  The terms "suffer" or "permit" have

16 been interpreted to require knowledge by the employer.  Lindow v. U.S., 738 F.2d 1057, 1060

17 (9th Cir. 1984) (citing Fox v. Summit King Mines, 143 F.2d 926 (9th Cir. 1944)).  Therefore,

18 when an employer knows or should have known that an employee is or was working overtime,

19 the employer must comply with the provisions of section 207.  Forrester, 646 F.2d at 414.

20 However, the definition of employee is "not intended to stamp all persons as employees who,

21 without any express or implied compensation agreement, might work for their own advantage on

22 the premises of another," nor should it be interpreted so as to "sweep under the Act each person

23 who, without promise or expectation of compensation, but solely for his personal purpose or

24 pleasure, work[s] in activities carried on by other persons either for their pleasure or profit."

25 Walling v. Portland Terminal Co., 330 U.S. 148, 152, 67 S.Ct. 639, 91 L.Ed. 809 (1947).

26           For example, if an individual is a "volunteer" instead of an "employee," Congress
             created an exemption to the FLSA's coverage applicable in the public
27           employment context. In particular, Congress provided that "any individual who
             volunteers to perform services for a public agency" is exempt from FLSA
28           coverage if:

(i) the individual receives no compensation or is paid expenses, reasonable benefits, or a nominal fee to perform the services for which the individual volunteered; and (ii) such services are not the same type of services which the individual is employed to perform for such public agency.

29 U.S.C. § 203(e)(4)(A). Thus, where a public employee engages in services different from those he or she is normally employed to perform, and receives "no compensation," or only a "nominal fee," such work is exempt from the FLSA and the public employee is deemed a volunteer.

The FLSA does not itself define "volunteer," but pursuant to a Department of Labor regulation promulgated under the FLSA, a "volunteer" is an "individual who performs hours of service for a public agency for civic, charitable, or humanitarian reasons, without promise, expectation or receipt of compensation for services rendered." 29 C.F.R. § 553.101(a). At the same time, "[v]olunteers may be paid expenses, reasonable benefits, a nominal fee, or any combination thereof, for their service without losing their status as volunteers." 29 C.F.R. § 553.106(a). It is critical that the facts show the volunteer offers his or her services "freely and without pressure or coercion, direct or implied, from an employer." 29 C.F.R. § 553.101(c). Finally, an individual may not be deemed a "volunteer" if the individual is "otherwise employed by the same public agency to perform the same type of services as those for which the individual proposes to volunteer." 29 C.F.R. § 553.101(d). This latter provision reflects the unmistakable intention of the Department of Labor (and no doubt of Congress) to prohibit "any manipulation or abuse of minimum wage or overtime requirements through coercion or undue pressure upon individuals to 'volunteer' their services." 29 C.F.R. § 553.101(b).

Purdham v. Fairfax County School Bd., 637 F.3d 421, 427-28 (4th Cir. 2011).

In this instance, the Court is unable to determine whether the time allegedly not compensated would fall under the volunteer exception of the FLSA.  The Court finds that the issue of whether Plaintiff Oyarzo's time was volunteered is an issue that will need to be addressed in the context of the trial of this action.  **Accordingly, Plaintiffs' motion in limine to preclude Defendants from presenting evidence that Plaintiff Oyarzo was working as a volunteer is DENIED without prejudice.**

### ii.      Evidence that Plaintiff Oyarzo did not intend to be paid for the activities

The purpose of the FLSA requires it to be applied even when individuals decline its protection.  Tony and Susan Alamo Foundation v. Secretary of Labor, 471 U.S. 290, 302 (1985). The issue here is not whether Plaintiff Oyarzo considered the activities that he was engaged in to be compensable but, as discussed above, whether Plaintiff Oyarzo's activities were the same type of services for which he was paid to perform.  29 C.F.R. § 553.101(d).

1    **Accordingly, Plaintiffs' motion in limine no. 7 is GRANTED in part, and**
2    **Defendants are precluded from introducing evidence that Plaintiff Oyarzo did not believe**
3    **the activities were compensable or intend to be paid for the overtime hours at issue here**
4    **absent a showing that the activities in which he was engaged were not of the same type for**
5    **which he was paid to perform.**

6    ###    iii.    Evidence that a management exemption applies to Plaintiff Oyarzo

7    Defendants appear to contend that Plaintiff Oyarzo was management and was therefore
8    responsible to report his time.   An executive exception to the FLSA applies to executive
9    employees who are 1) paid on a salary basis; 2) paid at a rate of not less than $455 per week; 3)
10   primary duties consist of management of the department; and 4) the primary duty includes the
11   customary and regular direction of the work of two or more other employees; and has authority
12   to hire and fire other employees or whose suggestions regarding hiring, firing, or promoting
13   other employees is given particular weight.   29 C.F.R. § 541.100; Baldwin v. Trailer Inns, Inc.,
14   266 .3d 1104, 1112 (9th Cir. 2001).

15   In this instance, Plaintiff Oyarzo was not a salaried employee and therefore will not fall
16   under the professional exemption to the FLSA.   Accordingly, absent Defendants establishing
17   such foundation, Defendants may not argue that a management exemption applies to preclude
18   Plaintiff Oyarzo's claims.   **Plaintiffs' motion in limine is GRANTED to preclude Defendants**
19   **from arguing that a management exemption would apply to Plaintiff Oyarzo's claims.**

20   ####    b.    Plaintiff Hart's Motion

21   Additionally, Plaintiffs contend that Defendants intend to introduce allegations regarding
22   the impropriety of Defendant Oyarzo's actions to demonstrate what Plaintiff Hart supported and
23   how he supported it.   Plaintiffs claim the allegations against Defendant Oyarzo are irrelevant to
24   Plaintiff Hart's First Amendment claim because Defendant Hart believed that the actions against
25   Defendant Oyarzo were illegal.   Defendants contend that the evidence is relevant to show that
26   Plaintiff Hart did not engage in protected speech or activity but on issues involving individual
27   personnel disputes and grievances, internal power struggles within the department, and disputes
28   concerning management styles which are not protected.

The evidence sought to be excluded in this instance is not accurately and efficiently evaluated in a motion in limine and it is necessary to defer ruling until during trial.  Jonasson, 115 F.3d at 440.  **Accordingly, Plaintiffs' motion in limine regarding Oyarzo's actions and allegations against him is DENIED without prejudice.**

        8.    <u>Plaintiffs' Motion in Limine No. 8</u>

Plaintiffs' motion in limine no. 8 seeks to exclude evidence regarding other litigation between the parties, specifically that Plaintiff Oyarzo brought a validation claim against Defendant TFD in the summer of 2010 or that Plaintiff Hart filed a Workers Compensation claim against Defendant TFD.  Defendants contend that the fact that Plaintiff Oyarzo filed the validation claim is relevant as he allegedly had already worked all the hours claimed to be uncompensated overtime in this action and the fact that he did not seek overtime wages in his suit tends to show that he did not work the hours and they were not performed at Defendant TFD's request or for their benefit.  Additionally, Defendants argue that Plaintiff Hart's workers compensation claim is relevant to the issue of damages he can receive should he prevail in this action.

The Court is not persuaded by Defendants argument that the validation action is relevant because Plaintiff Oyarzo should have brought his overtime claim in the same suit.  The fact that Plaintiff Oyarzo filed a validation claim against Defendant TFD is not relevant to the claim that he is entitled to unpaid wages, and the Court does not find any relevance to Plaintiff Hart's claims.  Further, reference to or evidence of Plaintiff Oyarzo's involvement in this prior lawsuit would be prejudicial to Plaintiff Oyarzo.  See Henderson v. Peterson, No. 4:07-cv-02838-SBA (PR), 2011 WL 2838169, at *5 (N.D. Cal. July 15, 2011) ("As a general matter, unless the prior lawsuits have been shown to be fraudulent, the probative value of evidence pertaining to a plaintiff's litigation history is substantially outweighed by the danger of jury bias.").  **Plaintiffs' motion shall be GRANTED in respect to Plaintiff Oyarzo's validation claim.**

As the Court found in the July 22, 2013 order granting Plaintiffs' motion for leave to supplement expert disclosures, evidence of Plaintiff Hart's workers compensation claim may be relevant to the damages that he is able to receive in this action.  However, the workers

1  compensation claim is not admissible to show that Plaintiff Hart is litigious and any attempt to

2  admit the evidence for such purpose is not permissible.  **Plaintiffs' motion shall be DENIED in**

3  **respect to Plaintiff Hart's workers compensation claim.**

4         9.     <u>Plaintiffs' Motion in Limine No. 9</u>

5         Plaintiffs' motion in limine no. 9 seeks to exclude evidence of the claims dismissed due

6  to the granting of Defendants' motion for summary judgment.  Defendants object to preclusion

7  of this evidence in that it is still relevant to the claims that are proceeding in this action.

8         At the motion in limine hearing, Plaintiffs clarified that they are moving to preclude

9  Defendants from **mentioning** that any claims or defendants have been dismissed from this action

10  due to the motion for summary judgment.  The fact that Defendants motion for summary

11  judgment has been granted in respect to certain claim or defendants is irrelevant and the

12  admission of such evidence is highly prejudicial.  **Accordingly, Plaintiffs' motion in limine no.**

13  **9 is GRANTED and Defendants shall not mention that claims or defendants have been**

14  **dismissed from this action due to their motion for summary judgment.**

15         10.    <u>Plaintiffs' Motion in Limine No. 10</u>

16         Plaintiffs' motion in limine no. 10 seeks to exclude any reference to Plaintiffs' claim for

17  attorney fees or expenses.  Defendants do not object to this motion in limine as long as it is made

18  reciprocal.  Whether the prevailing party is entitled to an award of attorney fees or expenses

19  following the jury's verdict in this action is irrelevant to the claims proceeding here.

20  **Accordingly, Plaintiffs' motion in limine no. 10 is GRANTED and neither party shall make**

21  **any reference to attorney fees or expenses.**

22         11.    <u>Plaintiffs' Motion in Limine No. 11</u>

23         Plaintiffs' motion in limine no. 11 seeks to preclude Defendants from any reference or

24  mention of the effect that a verdict in favor of either Plaintiff could have on the public agency.

25  Defendants oppose this motion on the ground that Plaintiffs have not identified any evidence to

26  be excluded and merely are requesting an order that defense counsel not engage in misconduct.

27         The effect that any verdict would have on TFD is irrelevant to the issue of whether

28  Plaintiff Oyarzo is entitled to overtime pay or Plaintiff Hart was retaliated against or his rights

1  under the FPBR were violated.  **Accordingly, Plaintiffs' motion in limine no. 11 is**
2  **GRANTED.**   However, this does not preclude Defendants from presenting evidence of
3  Defendant TFD's financial condition during the time period relevant in this action.

4          12.    Plaintiffs' Motion in Limine No. 12

5          Plaintiffs' motion in limine no. 12 seeks to exclude cumulative evidence regarding
6  Defendant TFD's financial condition.  Defendants contend that Plaintiffs' motion is too broad
7  and abstract and should be denied.

8          Prior to the presentation of evidence the Court is unable to rule on whether evidence is
9  cumulative.  Plaintiffs' motion in limine encompasses a matter that is appropriately raised during
10 the trial.  **Accordingly, Plaintiffs' motion in limine to exclude cumulative evidence is**
11 **DENIED and Plaintiff is required to object on the basis that evidence is cumulative during**
12 **the trial.**

13         **B.     Defendants' Motions in Limine**

14         Defendants bring thirteen motions in limine to exclude evidence during the trial of this
15 matter.

16         1.     Defendants' Motion in Limine No. 1

17         Defendants' motion in limine no. 1 seeks to exclude the testimony of David Moore and
18 other evidence that certain documents contain a "forged" signature of Joseph Turner or Marcie
19 Wells.  Plaintiffs contend that the introduction of the evidence is relevant to Plaintiff Hart's
20 claims of retaliation in violation of the First Amendment as Defendants are expected to argue
21 that the retaliation against Plaintiff Oyarzo, and by implication Plaintiff Hart, ceased in
22 September 2010.  Plaintiffs assert the documents are relevant to show that Defendants continued
23 to retaliate against Plaintiff Oyarzo until his employment terminated.

24         Plaintiff Oyarzo's claims for retaliation have been dismissed from this action and,
25 therefore, evidence that he was retaliated against are irrelevant to his claim that he was not paid
26 for overtime hours worked.  Further, "[t]he court may exclude relevant evidence if its probative
27 value is substantially outweighed by a danger of one or more of the following: unfair prejudice,
28 confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting

1   cumulative evidence." Fed. R. Evid. 403.

2         In this instance, the danger of confusing the issues and misleading the jury by presenting

3   evidence of these allegedly false signatures on documents significantly outweighs any relevance

4   that the issue could have to Plaintiff Hart's First Amendment claims.  **Therefore, Defendants'**

5   **motion in limine no. 1 is GRANTED.**  To the extent that Plaintiff believes that during the trial

6   of this matter Defendants have elicited evidence that makes this evidence relevant, the matter

7   shall be brought up for reconsideration outside the presence of the jury.

8         2.    Defendants' Motions in Limine to Exclude Certain Documents

9         Defendants' motions in limine nos. 2, 3, 5, 6, and 7 seek to exclude certain documents

10  that show that individuals had animosity toward Plaintiffs Oyarzo or Hart.  Plaintiff claims that

11  these documents are necessary to show the defendants' motivation and is directly relevant to

12  their credibility.

13        Evidence that is helpful in determining the credibility of a witness is of consequence to

14  the determination of the action.  Madrid v. Apache County, No. 03-cv-00172-PCT-RCB, 2006

15  WL 1273945, * 3 (D. Ariz. May 9, 2006).  Evidence is relevant if it has a mere tendency to

16  impeach a witness' credibility by a showing of bias or coercion.  Id.  Bias, a relationship between

17  a party and the witness that might lead the witness to slant his testimony in favor of or against a

18  party, is almost always relevant.  United States v. Hankey, 203 F.3d 1160, 1171 (9th Cir. 2000).

19  "Evidence tending to show a substantial reason for bias or interest in an important witness is

20  never collateral or irrelevant."  Barnard v. U.S., 342 F.2d 309, 317 (9th Cir. 1965).

21        However, such evidence is only admissible should the credibility of the witness be in

22  issue.  In other words, the witness would need to testify before bias would be able to be shown

23  and the statements would only be admissible to show bias and not for the truth of the matter

24  asserted.

25        a.    **Defendants' Motion in Limine No. 2**

26        Defendants seek to exclude a letter written by Darlene Hutchins to Defendant Hockett on

27  March 19, 2011, contending that it is not relevant as it merely addresses a personal conflict she

28  had with Defendant Hockett and has no probative value in this action.  Plaintiff contends that the

1   letter is relevant because it shows that Defendant Hockett spoke with Ms. Hutchins which he

2   denies.

3          The Court has reviewed the letter, which addresses a personal conflict between Ms.

4   Hutchins and Defendant Hockett (ECF No. 164-2) and finds that it is not relevant to the issues

5   that are proceeding in this action.  Further, the personal dispute and the issues addressed by Ms.

6   Hutchins are likely to introduce improper character evidence against Defendant Hockett and such

7   prejudice would substantially outweigh any potential probative value.

8          To the extent that Plaintiff contends that this evidence is admissible to show that

9   Defendant Hockett spoke with Ms. Hutchins regarding TFD, the only reference in the letter is

10  that Ms. Hutchins contacted Defendant Hockett to discuss the concerns she had with him and he

11  had with her, which is clearly a reference to the personal dispute between them.  This does not

12  contradict Defendant Hockett's statement that he did not speak with any newly elected board

13  member regarding TFD prior to December 13, 2010.  Additionally, Ms. Hutchins allegations

14  regarding documents in Plaintiff Oyarzo's personnel file have no relevance to the claims

15  proceeding in this action and, as discussed at Sections III.B.1 and 3, are excluded under Rule

16  403.  **Accordingly, Defendants' motion in limine to exclude the letter written by Ms.**

17  **Hutchins is GRANTED.**

18         **b.      Defendants' Motion in Limine No. 3**

19         Defendants seek to exclude e-mail correspondence written by Darlene Hutchins regarding

20  Defendant Oyarzo which they contend is not relevant in this action.  Plaintiffs contend that these

21  e-mails are relevant as Ms. Hutchins remained active in communicating with individuals at

22  Defendant TFD after she resigned from the Board and was reinstated on December 13, 2010, the

23  night the Board voted to terminate Plaintiff Hart and demote Plaintiff Oyarzo.

24         Defendants seek to exclude a November 11, 2010 e-mail from Darlene Hutchins to

25  Marcella Wells expressing her animosity toward Plaintiff Oyarzo.  (ECF No. 153 at 51-52.)  The

26  fact that Darlene Hutchins maintained animosity toward Plaintiff Oyarzo is irrelevant to the

27  claim that he was not paid overtime.  While Plaintiff Hart contends that this document

28  demonstrates animosity toward Plaintiff Hart, a review of the document clearly contradicts this

16

assessment.  While the e-mail addresses Ms. Hutchins feelings regarding Plaintiff Oyarzo, the only mention of Plaintiff Hart is that she received a call that Plaintiffs Oyarzo and Hart were out in front of the fire station washing trucks and the individual wanted to know why TFD allowed them to do whatever they want.

Furthermore, the Court is not persuaded by Plaintiff Hart's argument that Ms. Hutchins animosity toward Plaintiff Oyarzo is relevant to Plaintiff Hart's First Amendment claims.  Given the limited if any relevance of this e-mail to Plaintiff Harts claims the Court finds that the probative value is significantly outweighed by the danger of confusing the issues, misleading the jury, and wasting time.  **The motion is GRANTED in respect to the November 11, 2010 e-mail.**

Defendants seek to exclude a September 25, 2010 e-mail from Darlene Hutchins to Marcie Wells.  (ECF No. 153 at 56-57.)  Plaintiffs contend that the e-mail is relevant because Ms. Hutchins describes documents that were improperly placed in Plaintiff Oyarzo's personnel file.  However, as discussed in Section III.B.1 and 3, the Court finds that the documents placed in Plaintiff Oyarzo's personnel file are not relevant to any claims proceeding in this action.  **Defendants' motion to exclude the September 25, 2010 e-mail is GRANTED.**

Finally, Defendants seek to exclude a November 13, 2010 e-mail from Ms. Hutchins to Defendant Hockett as irrelevant.  (ECF No. 153 at 58.)  Plaintiff contends that the November 13, 2010 e-mail is relevant to show that Ms. Hutchins and Defendant Hockett were attempting to meet before the December 13, 2010 Board meeting.  **The Court finds that this specific e-mail could be relevant to the issues presented here and Defendants' motion to exclude the November 13, 2010 e-mail is DENIED.**  However, the Court notes that the e-mail string includes the November 11, 2010 e-mail which the Court has found to be irrelevant and only the November 11, 2010 e-mail may be admissible.  Therefore, if Plaintiffs attempt to introduce this e-mail, it must be removed from the e-mail string.

To the extent that Plaintiffs believe that any excluded e-mail has become relevant at trial should Ms. Hutchins testify, the matter shall be brought up for reconsideration outside the presence of the jury.

1          c.        **Defendants' Motion in Limine No. 5, 6, and 7**

2          Defendants seek to exclude evidence of Virginia Van Bolt, Marcie Wells, and Nicholas

3    Ohler's animosity toward Plaintiffs Oyarzo and Hart.  Plaintiffs contend that such evidence is

4    relevant to establishing the continued animosity and targeting of Plaintiff Oyarzo and

5    subsequently Plaintiff Hart.  The Court will not address the documents that have previously been

6    addressed in motion in limine no. 3, and the prior ruling stands.

7          To the extent that Defendants seek to exclude evidence of animosity to Defendant Hart

8    such evidence would go to the issue of bias and bias is almost always relevant.  Hankey, 203

9    F.3d at 1171.  However, the evidence of bias would only become an issue should the witness

10   testify.  **Because the animosity of a witness would be relevant on the issue of bias,**

11   **Defendants' motion in limine nos. 5, 6, and 7 are DENIED should these witnesses testify.**

12   However, to the extent that said evidence attempts to introduce evidence that this Court has

13   found to be irrelevant or prejudicial, such as evidence specific to animosity against Plaintiff

14   Oyarzo, the parties shall address such evidence with the Court outside the presence of the jury,

15   prior to bringing it up in front of the jury.

16          3.        Defendants' Motion in Limine No. 4

17         Defendants' motion in limine no. 4 seeks to exclude any reference to documents placed

18   in Plaintiff Oyarzo's personnel file in the fall of 2010.  Plaintiff Hart argues that this evidence is

19   relevant to his First Amendment claim that he refused to assist in discrimination against Plaintiff

20   Oyarzo.  However, as Plaintiff Hart argues in his motion in limine, the issue is whether Plaintiff

21   Hart believed that Defendants were treating Plaintiff Oyarzo illegally, not whether they were

22   actually treating him illegally.

23         Further, Plaintiff Oyarzo's retaliation claims have been dismissed from this action.  The

24   issue to be decided is whether Defendants were retaliating against Plaintiff Hart and whether

25   documents were placed in Plaintiff Oyarzo's personnel file in the fall of 2010 has very little

26   relevance, if any, to Plaintiff Hart's claims.  Additionally, the probative value of this evidence is

27   substantially outweighed by the danger confusing the issues and misleading the jury.  Fed. R.

28   Evid. 403.  **Accordingly, Defendants' motion to exclude evidence of documents placed in**

1    **Plaintiff Oyarzo's personnel file in the fall of 2010 is GRANTED.**

2        4.    Defendants' Motions in Limine to Exclude Plaintiffs' Expert Witnesses

3        Defendants' motions in limine Nos. 8, 9, and 10 seek to exclude expert witness

4    testimony.  Plaintiffs oppose the motions to exclude their expert witnesses.

5        The Federal Rules of Evidence provide for the testimony of an expert witness who is

6    "qualified as an expert by knowledge, skill, experience, training, or education."  Fed. R. Evid.

7    702.  The witness "may testify in the form of an opinion or otherwise if: (a) the expert's

8    scientific, technical, or other specialized knowledge will help the trier of fact to understand the

9    evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c)

10   the testimony is the product of reliable principles and methods; and (d) the expert has reliably

11   applied the principles and methods to the facts of the case."  Fed. R. Evid. 702.

12       Expert testimony that is both relevant and reliable is admissible pursuant to Rule 702.

13   Elsayed Mukhtar ("Mukhtar") v. California State University, Hayward, 299 F.3d 1053, 1063 (9th

14   Cir. 2002).  Under the Federal Rules, the trial court has the role of gatekeeper to ensure that the

15   twin concerns of reliability and helpfulness are met and must exclude testimony that does not

16   achieve these goals.  Stilwell v. Smith & Nephew, Inc., 482 F.3d 1187, 1192 (9th Cir. 2007).

17       **a.    Defendants' Motion in Limine No. 8**

18       Defendants seek to exclude the testimony of Beth De Lima arguing that she is not

19   qualified to testify in this action because she has no experience with fire departments in general,

20   much less fire departments the size of Defendant TFD; her testimony is not reliable or relevant to

21   the claims proceeding in this action; and will not be helpful to the trier of fact.  Plaintiffs contend

22   that Ms. De Lima is clearly qualified under Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579,

23   593-94 (1993) to testify on the issue of whether Defendant TFD failed to meet the human

24   resources standard of care in implementing the reduction in workforce and failed to follow their

25   own policies in disciplining Plaintiff Hart.

26       Ms. De Lima has a Master's Degree in Business Administration.  (Curriculum Vitae of

27   Beth De Lima 4, ECF No. 164-9.)   She has been assisting corporate, non-profit, and

28   governmental clients with human resources policy development and implementation since 1992

1 and founded her consulting firm in 1993.  (Id. at 3.)  Ms. De Lima is certified as a senior

2 professional in human resources by the Human Resource Certification Institute with state

3 specific certification in California.  (Id. at 4.)  Ms. De Lima is a senior professional member of

4 the Society for Human Resource Management, (id. at 5), which is the largest human resources

5 organization in the world, (ECF No. 153 at 85).  Ms. De Lima is experienced in management

6 training, employee policy handbook development and modification, organizational development,

7 hiring and termination procedures, and performance management systems.  (ECF No. 164-9 at

8 3.)  Based upon Ms. De Lima's education, experience and training, the Court finds that Ms. De

9 Lima is qualified to testify as an expert in human resources.

10      While Defendants argue that Ms. De Lima is not qualified in this action because she has

11 not worked with a small fire department, Ms. De Lima has worked with the County of Calaveras,

12 Utica Power Authority in Calaveras County, Calaveras County Health and Human Services

13 Agency, Tuolumne County Utility District, and Murphy's Sanitary District.  (Depo. of Beth De

14 Lima 3-4, ECF no. 165-1.)  The Court finds that this experience is sufficient to qualify her to

15 testify in this action.  Further, Defendants have provided no argument as to why the lack of

16 experience working with fire departments changes the analysis.  Clearly, Defendants can address

17 the issues regarding the application of the standard to fire departments under cross examination.

18      Defendants contend that Ms. De Lima could not specifically identify the sources for the

19 human resource industry standard of care and should therefore her testimony is not reliable.  In

20 her deposition Ms. De Lima testified:

21           human resource industry standards . . . is, unfortunately, not just one source.

22           It's what the industry strives - - the industry uses as reference sources to establish
           the standard, and so sources like the National Employment Law Institute, the
23           Calaveras Chamber of Commerce, the Federal Chamber of Commerce, the
           Society for Human Resources Management, which is an international
24           organization, as well as many of the larger law firms have many sources on-line
           that we utilize for referral basis to identify what the standard is for our profession.
25

26 (ECF No. 153 at 84.)   Ms. De Lima then referred to her bibliography which gave a

27 comprehensive list of the sources that she has utilized over the years to develop the industry

28 standard of care.  (Id. at 84-85.)

Q. Okay. And are -- are the sources in your bibliography, do they establish the human resource industry standard for determining which employees to terminate, promote, or demote under the premise of a reduction in force?

A. Well, the standard is the procedure, not the who, so in other words, from an industry standard, how do you -- what criteria will you use to determine who, not -- the standards don't tell you who you're going to demote or RIF off, reduction in force off, and separate from the employee.  It's going to give you the standards that you use to objectively form that function.

Q. Again, those standards that you believe should be employed have applied to reductions in force are set forth in the materials that have been collected in your bibliography?

A. I would represent that, yes.

(ECF No. 165-1 at 46.)

Rule 702 does not require that expert testimony be based upon science, but allows an expert opinion that is the product of reliable principles and methods.  Fed. R. Evid. 702(c).  The Court finds that Plaintiff has shown that Ms. De Lima's testimony is reliable.

Defendants also contend that Ms. De Lima's testimony will not be helpful to the jury and should be excluded on that basis.  Plaintiff Hart is contending that Defendants retaliated against him in violation of the First Amendment and seeks to introduce evidence that Defendant Hart's discipline and termination were based upon pretextual reasons.  Whether Defendants acted within the acceptable human resource standard is relevant to the issues to be presented here and Ms. De Lima's opinion will assist the jury in determining whether Defendants actions were pretextual.

At the motion in limine hearing, defense counsel argued that Defendants had no way to be familiar with the human resources standard of care which Ms. De Lima has created based upon her experience over the years.  However, Daubert does not require the Court to consider whether the defendants were knowledgeable regarding the area in which the expert will testify, but whether the expert's testimony is reliable and will assist the jury.

While Defendants argue that Ms. De Lima is not qualified because she is not familiar with labor laws applicable to fire districts, the FLSA as it applies to fire districts or the FPBR, and failed to consider relevant facts in coming to her opinion, these are suitable grounds for cross

1  examination, not a reason to exclude her testimony as to the human resources standard of care.

2  However, as Ms. De Lima is not an expert in the FPBR or FLSA (ECF No. 153 at 83), she may

3  not offer an opinion on whether Defendants actions violated such statutes.

4        **Defendants' motion in limine no. 8 is DENIED and Ms. De Lima may testify as an**

5  **expert witness on the issue of whether Defendant TFD failed to meet the human resources**

6  **standard of care in implementing the reduction in workforce as it applies to Plaintiff Hart**

7  **and failed to follow their own policies in disciplining Plaintiff Hart.**  However, Ms. De Lima

8  may not testify to any matters regarding Plaintiff Oyarzo's discipline or termination as they are

9  irrelevant to the issues proceeding in this action.

10        **b.**     **Defendants' Motion in Limine No. 9**

11        Defendants seek to exclude certain testimony of Paul Stein who has been retained as an

12  expert witness by Plaintiffs.  Plaintiffs contend that Mr. Stein is clearly qualified to submit expert

13  testimony in this matter.

14        Mr. Stein has an associate of arts degree in fire science and a bachelor of arts degree in

15  management.  (Curriculum Vitae of Paul Stein 9, ECF No. 164-10.)  Mr. Stein worked for the

16  Santa Monica Fire Department from 1969 to 1999 and worked as an interim fire chief for the

17  Lakeside Fire Department during 2003 and 2004.  (Id.; Depo. of Paul Stein 144-46, ECF No.

18  153.)  Mr. Stein has twenty-five years of experience as a captain and chief officer, has extensive

19  experience training other firefighters, and has written numerous published articles.  (ECF No.

20  164-10 at 9, 11.)  Mr. Stein consults in the areas of officer development, organizational design,

21  hierarchy, methodology, firefighting strategy and tactics, incident mitigation and teaching

22  instructors how to teach.  (ECF No. 164-11 at 3.)  The Court finds that Mr. Stein is qualified to

23  testify as an expert in this action based upon his education, training, and experience and his

24  testimony is reliable and relevant to the issues in this action.

25        **i.**     <u>Expert Testimony as to meaning of statutes</u>

26        Defendants request that the Court preclude Mr. Stein from offering an opinion that

27  allowing single person staffing of a fire station is a violation of Cal OSHA and contends that 8

28  C.C.R. § 5144(g), 29 C.F.R. § 1910.134, and NFPA 1500, section 8.5.17 are irrelevant to this

1   action.  Plaintiff Hart contends that when reading these documents in conjunction they set the

2   standard for engaging in an interior attack on a structure fire.

3       Defendants cite United States v. Moran, 482 F.3d 1101 (9th Cir. 2007) for the proposition

4   that an expert may not testify to the legal conclusion that certain conduct would violate a statute

5   or regulation.  Moran involved a criminal defendant appealing his conviction.  The Ninth Circuit

6   stated "an expert witness cannot give an opinion as to her legal conclusion, i.e., an opinion on an

7   ultimate issue of law.  Similarly, instructing the jury as to the applicable law is the distinct and

8   exclusive province of the court."  Id. at 1105-06 (quoting Hangarter v. Provident Life and Acc.

9   Ins. Co., 373 F.3d 998, 1016 (9th Cir. 2004)).

10      In a civil action, an expert opinion is not objectionable because it embraces an ultimate

11  issue.  Fed. R. Evid. 704(a).  Whether allowing single staffing of a fire station is a violation of

12  Cal OSHA is not the ultimate issue in this action, however, it is relevant to Plaintiff Hart's claim

13  that Defendants retaliated against him.  Mr. Stein has been employed to state his opinion

14  regarding whether the conditions at TFD were safety violations and such testimony is relevant

15  and permissible in this action.

16      To the extent that Defendants disagree with Mr. Stein's opinion, that is a proper subject

17  to be dealt with on cross examination or by delving into the subject with Defendants' expert

18  witnesses who are qualified on this issue.  **Defendants' motion in limine is DENIED as to Mr.**

19  **Stein's ability to testify on these issues.**

20          ii.      Testimony as to safety violations related to Plaintiff Oyarzo's complaint

21      Defendants move to preclude testimony regarding safety violations reported by Plaintiff

22  Oyarzo as those claims are no longer proceeding in this action.  Plaintiff Oyarzo's claim that he

23  was retaliated against for reporting safety violations has been dismissed from this action and are

24  no longer relevant.  The only relevant safety violations are those which Plaintiff Hart claims to

25  have reported and for which he claims that he was subjected to retaliation.  **Defendants' motion**

26  **in limine is GRANTED as it relates to any safety violations that were not reported by**

27  **Plaintiff Hart.**

28  ///

1        iii.    Testimony regarding reduction in force procedure

2        While Mr. Stein is qualified to testify as an expert in the subject of firefighting, he has

3   not been qualified as a human resources expert, nor does he have any experience in the area of

4   reduction of force.  (ECF No. 164-11 at 12-14.)  **Defendants' motion in limine is GRANTED**

5   **in this respect and Mr. Stein may not provide an opinion regarding the manner in which a**

6   **reduction in force should be conducted.**

7        iv.    Testimony regarding the qualifications of firefighters

8        Defendants contend that Mr. Stein's opinions on the qualifications of the firefighters

9   within TFD is not supported by reliable facts because he did not interview the individuals and his

10  review did not include their personnel files or complete training records.  Plaintiff contends that

11  Mr. Stein is qualified to testify to the qualifications of the firefighters, and the propriety of letting

12  the most qualified individual go and granting promotions to the remaining firefighters.

13       Mr. Stein is clearly qualified as an expert on the qualifications of the firefighters and

14  Defendants argument regarding the scope of his review goes to the weight of his opinion, not

15  whether it is admissible.

16       **Defendants' motion in limine is DENIED as to Mr. Stein's testimony regarding the**

17  **qualifications of firefighters.**  However, as discussed above, Plaintiffs have not shown that Mr.

18  Stein is qualified to testify as to the manner in which a fire department should conduct a

19  reduction in workforce and, for that reason, Mr. Stein may not opine regarding who should have

20  been terminated, how the reduction in workforce should have proceeded, or the propriety of

21  promoting the remaining firefighters.

22       **c.    Defendants' Motion in Limine No. 10**

23       Defendants' motion in limine no. 10 seeks to exclude certain testimony of Plaintiffs'

24  expert witness, Dr. Mahla.  Plaintiffs oppose the motion.

25       i.    Plaintiff Oyarzo's Damages

26       Defendants argue that Plaintiff Oyarzo's only remaining claim is for failure to pay

27  overtime wages from March 1, 2009 through June 8, 2010 and Dr. Mahla's testimony should be

28  limited to this time period.  Plaintiff Oyarzo argues that he is entitled to unpaid wages from

1  March 18, 2008 through June 8, 2010 and Defendants have been on notice that this is the time

2  period for which he is claiming unpaid wages since Plaintiff Oyarzo's April 2010 deposition.

3        The issue here is whether Defendants will suffer prejudice if the Court allows that

4  amendment to Plaintiff Oyarzo's damage claim.   See U.S. v. Pend Oreille Public Utility Dist.

5  No. 1, 926 F.2d 1502, 1511-12 (9th Cir. 1991).   Defendants do not set forth any argument that

6  they will be prejudiced by allowing Plaintiff to amend the time period for which he is seeking

7  damages.

8        In the deposition of Plaintiff Oyarzo on April 25, 2012, Plaintiff Oyarzo was asked if he

9  worked time for which he was not compensated prior to March 1, 2009, and Plaintiff Oyarzo

10  stated that he had.  (Depo. of Oyarzo 3-4, ECF No. 164-5.)  In response to Defendant Machado's

11  interrogatories, Plaintiff Oyarzo stated that he was seeking uncompensated hours from March 18,

12  2008 through June 7, 2010.   (Plaintiff Benjamin Oyarzo's Response to Defendant Brian

13  Machado's Interrogatories 3, ECF No. 164-6.)  Finally, Defendants' expert report contains a

14  summary which includes the period from March 2008 through June 2010.  (Summary of

15  Analysis by Mahla with Enos Totals and Analysis 5-33, ECF No. 164-7.)

16        The Court finds that since Defendants have been on notice that the overtime claim

17  encompassed the period from May 18, 2008 through June 8, 2010 and have conducted discovery

18  on this issue, there is no prejudice to Defendants by allowing Plaintiff Oyarzo to seek damages

19  from May 18, 2008 through June 8, 2010.  However, Dr. Mahla is limited to testimony regarding

20  Plaintiff Oyarzo's damages from May 18, 2008 through June 8, 2010, the date of damages

21  calculated in his report.

22        **Defendants' motion in limine is DENIED and Dr. Mahla shall be allowed to testify**

23  **to the damages included in his expert report from May 18, 2008 through June 8, 2010.**

24        ii.    Plaintiff Hart's Damages

25        Defendants contend the order on the motion for summary judgment limited Plaintiff

26  Hart's remaining claims and the only remaining cause of action for which he could seek post

27  termination wages is for a violation of California Labor Code section 6310 which does not allow

28  for any post termination economic loss.   Defendants seek to preclude Dr. Mahla from

1   introducing expert testimony regarding any post termination economic losses as this remedy is

2   not allowed under California Labor Code section 6310.  Plaintiff Hart contends that his First

3   Amendment claims are not limited as described by Defendants and he is entitled to post

4   termination wages under California Labor Code section 6310.

5        Defendants contend that Plaintiff's First Amendment claim is limited to those claims

6   which were denied in the order for summary judgment and because the only adverse action

7   remaining is not for the termination of Plaintiff Hart, he is not entitled to future economic loss

8   for his First Amendment claim.  Plaintiff Hart contends that he is not limited to presenting

9   evidence of adverse actions that were considered in the motion for summary judgment.

10       Plaintiff is correct that he is not limited to only those adverse actions raised in the motion

11  for summary judgment.  However, he is limited by those issues that have previously been

12  decided in this action.  As with many of the issues in this action, the parties hotly dispute

13  whether Plaintiff Hart can present evidence that his termination was adverse action in support of

14  his First Amendment claims or whether the termination was precluded as an adverse action by

15  the order on Defendants' motion for summary judgment.

16       In the order partially granting summary judgment, United States District Judge Lawrence

17  J. O'Neill found that Defendants Hockett and Hutchins were previously found to be entitled to

18  absolute immunity for their vote to reorganize Defendant TFD and summary judgment was

19  granted for the First Amendment claim based upon this conduct.  (ECF No. 107 at 9:20-10:3.)

20  Therefore, the question is whether Defendant Hockett's absolute immunity for his vote to

21  reorganize Defendant TFD extends to the decision to terminate Plaintiff Hart.

22       Absolute immunity in this instance extends to Defendant Hockett's legislative, as distinct

23  from ministerial, duties.  Bogan v. Scott-Harris, 523 U.S. 44, 52 (1998).  Whether an act is

24  legislative in nature depends on the "character and effect" of the act, and not upon the motive or

25  intent of the individual actor.  Community House, Inc. v. City of Boise, Idaho, 623 F.3d 945, 960

26  (9th Cir. 2010), Bogan, 523 U.S. at 54.  In determining whether an act is legislative in character

27  and effect, the court is to consider "(1) whether the act involves ad hoc decisionmaking, or the

28  formulation of policy; (2) whether the act applies to a few individuals, or to the public at large;

1   (3) whether the act is formally legislative in character; and (4) whether it bears all the hallmarks

2   of traditional legislation."   Community House, Inc., 623 F.3d at 960 (quoting Kaahumanu v.

3   County of Maui, 315 F.3d 1215, 1220 (9th Cir. 2003)).   In considering whether the Board

4   members were entitled to absolute immunity for Plaintiff Hart's termination, in Hart v.

5   Tuolumne Fire Dist., 1:11-cv-01272-LJO-DLB (E.D. Cal.), Judge O'Neill found that:

6   > Here, "stripped of all considerations of intent and motive," the individuals' action
7   > in voting to release plaintiff from employment was legislative. See Bogan, 523
8   > U.S. at 55. The act of bringing a motion and voting on the motion are part of the
> formal legislative duties of the Board for TFD and bears the hall marks of
> traditional legislation. The individuals' conduct also is a formulation of policy, as
9   > the motion and vote named specific fire personnel and impacted the entirety of the
> TFD personnel. This court does not inquire into the motives of legislative acts.
10  > "[I]t simply is "not consonant with our scheme of government for a court to
> inquire into the motives of legislators." Bogan, 523 U.S. at 54-55. The acts
11  > alleged in paragraphs 40-41 are formal legislative functions and are entitled to
> absolute immunity. Therefore, to the extent plaintiff seeks liability against the
12  > individuals for any legislative act, including the motion and the subsequent vote
> (regardless of motive), the individuals are immune. (See FAC ¶40-41.[4])

13  (Order on Motion to Dismiss 11:23-12:5, ECF No. 24).   Because Judge O'Neill has previously

14  ruled that Defendant Hockett was entitled to absolute immunity for the decision to terminate

15  Plaintiff Hart's employment, Plaintiff's termination may not be used as an adverse action in

16  support of his First Amendment claim against Defendant Hockett.

17  However, the issue of whether Plaintiff Hart's termination can be evidence of adverse

18  action by Defendant Powers has not been decided.  **Because Plaintiff could still prevail on the**

19  **claim that his termination was retaliation in violation of the First Amendment, Defendants'**

20  ---

[4] Plaintiff Hart's amended complaint at paragraphs 40 and 41 stated:

22  > 40. The first meeting of the newly elected Board of Directors occurred on December 13, 2010.  At
> this meeting, Defendant MACHADO brought a motion to lay off the least senior firefighter and
23  > reclassify the remaining firefighting staff as Engineers with a pay rate of $12 per hour.  The Board
> of Directors voted 4-1 in favor of the motion.
> 41. The Board's vote resulted in the following:
24  > a. Mr. HART was terminated, effective January 1, 2011.
> b. Mr. Oyarzo was demoted one rank and his pay reduced 43 percent.  Mr. Oyarzo refused the
25  > demotion and was terminated, effective January 1, 2011.
> c. Defendant POWERS remained at the same rank, and his pay was reduced 25 percent.
26  > Defendant POWERS remained employed with Defendant TFD.
> d. Mr. Ohler was promoted one rank and his pay remained unchanged.  Mr. Ohler remained
> employed with Defendant TFD.
27  > e. Mr. Podesta was promoted one rank and his pay remained unchanged.  Mr. Podesta remained
> employed with Defendant TFD.
28  (ECF No. 10.)

**motion to exclude the testimony of Plaintiff's expert regarding future damages is DENIED**. The Court will address the issue of damages as it applies to Labor Code Section 6310 as raised below.

5.   Defendants' Motion in Limine No. 11

Defendants' motion in limine No. 11 seeks to exclude evidence of any uncompensated time for Defendant Oyarzo outside the period of March 18, 2008 through June 8, 2010 as this was the only period pled in the complaint. **Defendants previously raised this issue in motion in limine no. 10 and the Court DENIES this motion in limine for the reasons discussed above.**

6.   Defendants' Motion in Limine No. 12

Defendants' motion in limine No. 12 seeks to exclude any reference to future lost wages and benefits in relation to Plaintiff Hart's California Labor Code Section 6310 claim.

The parties disagree on whether Plaintiff Hart can obtain post termination economic losses pursuant to California Labor Code section 6310.  Section 6310(b) provides that

> Any employee who is discharged, threatened with discharge, demoted, suspended, or in any other manner discriminated against in the terms and conditions of employment by his or her employer because the employee has made a bona fide oral or written complaint . . . of unsafe working conditions, or work practices, in his or her employment or place of employment, or has participated in an employer-employee occupational health and safety committee, shall be entitled to **reinstatement and reimbursement for lost wages and work benefits** caused by the acts of the employer.  (Emphasis added.)

The purpose of section 6310 is not only to ensure the reporting of safety violations, but is to prevent retaliation against employees who report working conditions they believe to be unsafe. Freund v. Nycomed Amersham, 347 F.3d 752, 759 (9th Cir. 2003).  "The California Supreme Court has made it clear that damages for wrongful discharge in violation of public policy are not limited to those specified in the underlying statute that was violated."  Freund, 347 at 760. Therefore, regardless of the interpretation this Court adopts on the damages allowed by section 6310, Plaintiff Hart may receive front pay should he prevail on his claim that his termination was retaliation in violation of the First Amendment.

Plaintiffs cite cases finding that where reinstatement is not a viable option, courts have

1  awarded front pay as a substitute for reinstatement.  However the cases on which Plaintiffs rely

2  have construed the damages available under the Age Discrimination in Employment Act

3  ("ADEA").  See Cancellier v. Federated Dept. Stores, 672 F.2d 1312 (9th Cir. 1982), Whittlesey

4  v. Union Carbide Corp., 742 F.2d 724 (2nd Cir. 1984); Blum v. Witco Chemical Corp., 829 F.2d

5  367 (3d Cir. 1987).  The ADEA provides that "[i]n any action brought to enforce this chapter the

6  court shall have jurisdiction to grant such legal or equitable relief as may be appropriate to

7  effectuate the purposes of this chapter, including without limitation judgments compelling

8  employment, reinstatement or promotion, or enforcing the liability for amounts deemed to be

9  unpaid minimum wages or unpaid overtime compensation under this section."  29 U.S.C. §

10  626(b).  The ADEA provides for a much broader range of remedies than those specified in

11  section 6310.

12       Section 6310 specifically limits damages to "reinstatement and reimbursement for lost

13  wages and work benefits" and does not provide for a broad range of legal and equitable

14  remedies.  "The statute's plain meaning controls the court's interpretation unless its words are

15  ambiguous." White v. Ultramar, Inc., 21 Cal.4th 563, 572 (1999) (quoting Kobzoff v. Los

16  Angeles County/UCLA Med. Ctr., 19 Cal.4th 851, 861 (1998)).  The wording of this statute is

17  not ambiguous, but specifically states those remedies available under section 6310.

18       The Court finds that had the California Legislature had intended to allow a wider range of

19  remedies for a violation of section 6310, they would have so stated.  Therefore, under section

20  6310, Plaintiff is entitled to reimbursement from the date that he would receive reinstatement to

21  the date of his termination.  Accordingly, Plaintiff may present evidence of lost wages and work

22  benefits for this period of time.  **Plaintiff Hart's damages under California Labor Code**

23  **Section 6310 do not include future wages and Defendants' motion in limine no. 12 is**

24  **GRANTED.**

25       7.    Defendants' Motion in Limine No. 13

26       Defendants' motion in Limine No. 13 seeks to exclude any evidence pertaining to issues

27  disposed of by the order granting in part Defendants' motion for summary judgment.

28       a.    **Plaintiff Oyarzo's Rank from May 12, 2008 through September 6, 2010**

29

1    Defendants seek to preclude any evidence that Plaintiff Oyarzo was not the Fire Chief

2 from May 12, 2008 through September 6, 2010, citing the memorandum issued on the motion for

3 summary judgment.  Plaintiffs contend that Defendants mischaracterize the order and he may

4 present evidence of the duties he performed in support of his FLSA claim.

5    In opposition to the motion for summary judgment, Plaintiff Oyarzo argued that he was

6 not the Fire Chief because the Board that appointed him did not satisfy the requirements for

7 Board membership.   More than two years after being appointed, Plaintiff Oyarzo filed a

8 validation action challenging several Board members which resulted in the resignation of one of

9 the Board members.  (Memorandum and Order 14, ECF No. 107.)  The memorandum and order

10 issued July 1, 2008, states:

11         There is simply no evidence that Oyarzo was anything other than the "Fire Chief"
        from the time of his promotion to that position in 2008 through his placement on
12      administrative leave in late June 2010.  He did not file his validation action until
        July 2010, which was far too late to invalidate his promotion to Chief.  He was
13      treated as the Chief and acted as the Chief. He cannot now escape the plain
        language of the Fire Chief's job description, which describes a Fire Chief's
14      general duties to include "plan[ning], organiz[ing], direct[ing], supervis[ing],
        coordinat[ing], and review[ing] all the activities and operations of the Fire
15      District…." (Pltf. Ex. D6.)  Specific duties "include[e]" but are "not limited to"
        "provid[ing] highly responsible and complex administrative support to the Board
16      of Directors," "coordinat[ing] Fire District activities with other departments and
        outside agencies, [and] … act[ing] as public and intergovernmental relations
17      representative…." Id.

18    In the decision on summary judgment, Plaintiff Oyarzo was found to have been the Fire

19 Chief during the time period relevant to the allegations in the complaint.  **Defendants' motion in**

20 **limine is GRANTED and Plaintiff Oyarzo is precluded from presenting evidence to show**

21 **or arguing that he was not the Fire Chief from May 2008 through September 6, 2010.**

22         **b.      Plaintiff Hart's support of Plaintiff Oyarzo in summer and fall of 2010**

23    Defendants move to preclude Plaintiff Hart from presenting evidence of any activity

24 other than his support of Oyarzo in presentation of his claims under the First Amendment.

25 Plaintiff Hart contends that he is not precluded from presenting evidence that was not ruled upon

26 in the motion for summary judgment.

27    In the amended complaint, Plaintiff Hart alleged that he was retaliated against for his

28 support of the annexation effort and for his support of Plaintiff Oyarzo.  Judge O'Neill granted

1   summary judgment on Plaintiff Hart's claim that he was retaliated against for his support of the

2   annexation effort.  (ECF No. 107 at 10-11.)  Plaintiff Hart's First Amendment claims are

3   proceeding only on his claims of retaliation and deterrence for his support of Plaintiff Oyarzo,

4   and evidence of retaliation for any other acts by Plaintiff Hart are irrelevant.  To the extent that

5   Plaintiff Hart contends that he may present evidence that he "refused to engage in retaliatory acts

6   against Plaintiff Oyarzo," the Count finds this to be evidence of his support for Plaintiff Oyarzo

7   and it would therefore be admissible.  **Defendants' motion in limine is GRANTED and**

8   **Plaintiff Hart may only present evidence of retaliation due to his support of Plaintiff**

9   **Oyarzo in the summer and fall of 2010.**

10        **c.**     **Evidence of adverse actions taken by Defendant Powers**

11       Defendants move to exclude evidence of any adverse actions taken against Plaintiff Hart

12   by Defendant Powers other than transferring Plaintiff Hart to Defendant Powers shift in Plaintiff

13   Oyarzo's absence or transferring job responsibilities from Plaintiff Hart to interns.  Plaintiff Hart

14   argues that he is not limited to only those actions addressed in the motion for summary

15   judgment.

16       As previously stated, Plaintiff is limited to the allegations made in the first amended

17   complaint that have not been decided in the order granting in part summary judgment.  Plaintiff

18   Hart is precluded from offering evidence on the alleged retaliatory acts by Defendant Powers on

19   which the district court granted summary judgment.  **Defendants' motion is GRANTED to the**

20   **extent that Plaintiff Hart may not introduce evidence that he was mocked and ostracized**

21   **by his co-workers at the direction of Defendant Powers; that he was forced to work 48-**

22   **hour shifts on his own by Defendant Powers; or that Defendant Powers failed to**

23   **communicate the funeral request to Plaintiff Hart.**

24        **d.**     **Evidence of adverse actions taken by Defendant Hockett**

25       Defendants move to exclude evidence of adverse action taken against Plaintiff Hart by

26   Defendant Hockett other than requiring Plaintiff Hart to work shifts alone while Plaintiff Oyarzo

27   was on medical leave and disciplining Plaintiff Hart for allowing Nick Burns to volunteer at TFD

28   and for failing to attend the funeral on October 25, 2010.  Plaintiff makes the same argument that

he made in opposing the above motion in limine.

While Defendants argue that the motion for summary judgment was granted for Plaintiff's allegation that Defendant Hockett joined in the retaliation against Plaintiff Hart, the order does not state such.  Government officials may not be held liable for the actions of their subordinates under a theory of respondeat superior.  Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009).  Since a government official cannot be held liable under a theory of vicarious liability for section 1983 actions, Plaintiff must show that the official has violated the Constitution through his own individual actions.  Iqbal, 556 U.S. at 677; OSU Student Alliance v. Ray, 699 F.3d 1053, 1069 (9th Cir. 2012).

In the order on the motion for summary judgment, Judge O'Neill found that Plaintiff "Hart's generic accusation that Hockett 'joined in the retaliation' against Hart cannot be sustained.  Hockett's conduct must be examined based upon Hockett's own affirmative conduct." (ECF No. 107 at 39.)  While Plaintiff Hart may not argue that Defendant Hockett was liable for failing to prevent the retaliation due to his supervisory position, Plaintiff Hart is not precluded from presenting evidence of Defendant Hockett's own affirmative conduct.  **Defendants' motion in limine is DENIED in this respect.**

  **e.** **Evidence that Defendant TFD has a policy, custom, or practice of tolerating, encouraging, or approving violations of employees' constitutional rights**

Defendant moves to exclude evidence that Defendant TFD had an official policy, custom, or practice of tolerating, encouraging, or approving violations of employee's constitutional rights to engage in political activity and due process of law based upon the granting of the motion for summary judgment.  Plaintiff Hart argues that this does not preclude him from offering evidence of previous terminations to show that Defendants had knowledge of the FPBR and to establish malice for the violations of Plaintiff Hart's rights under the FPBR.

Judge O'Neill granted summary judgment on Plaintiffs' claims regarding a policy, custom, or practice of approving violations of employee's constitutional rights to engage in political activity and to due process of law.  (ECF No. 107 at 52.)  Plaintiffs are precluded from introducing evidence of such a policy, custom or practice.

1    **Defendants' motion in limine in GRANTED and Plaintiffs may not introduce**
2    **evidence that TFD has a policy, custom, or practice of tolerating, encouraging, or**
3    **approving violations of employees' constitutional rights.**  To the extent that Plaintiffs intend
4    to offer evidence for another purpose, Defendants may offer the relevant objection at trial.

5           **f.**       **Reference to Plaintiff Hart's lay off as punitive action under the FPBR**

6           Defendants move to exclude any reference to Plaintiff Hart's lay off as punitive action
7    under the FPBR.  Plaintiffs oppose this on the ground that they were seeking relief from the
8    ruling on the motion for summary judgment.

9           On September 26, 2013, this Court issued an order denying Plaintiffs' motion for
10   reconsideration of the memorandum and order on motion for summary judgment.   (Order
11   Denying Pls.' Mot. to Amend the Compl., Mot. for Reconsideration, and Mot. for Separate Trials
12   9, ECF No. 160.)  **Accordingly, Defendants' motion in limine is GRANTED and Plaintiff**
13   **Hart may not refer to his lay off as punitive action under the FPBR.**

14                                     **IV.**

15                        **CONCLUSION AND ORDER**

16          Based on the foregoing, IT IS HEREBY ORDERED that:

17          1.       Plaintiffs' motions in limine are GRANTED IN PART AND DENIED IN PART
18                  as follows:

19          a.       Plaintiffs' motions in limine nos. 1, 2, 5, 6, 7, 9, 10, and 12 are GRANTED;

20          b.       Plaintiffs' motions in limine nos. 3, 4, and 11 are DENIED;

21          c.       Plaintiff's motion in limine no. 7 is GRANTED IN PART and DENIED IN PART
22                  as follows:

23          i.       Defendants may not introduce evidence that Plaintiff Oyarzo did not believe the
24                  activities were compensable or intend to be paid for the overtime hours at issue
25                  here absent a showing the activities were not of the same type he was paid to
26                  perform;

27          ii.       Defendants may not argue that a management exception applies to Plaintiff
28                  Oyarzo;

d.      Plaintiffs' motion in limine no. 8 is GRANTED in respect Plaintiff Oyarzo' validation claim, and DENIED in respect to Plaintiff Hart's Workers Compensation claim.

2.      Defendants' motions in limine are GRANTED IN PART AND DENIED IN PART as follows:

a.      Defendants' motions in limine nos. 1, 2, 4, are GRANTED;

b.      Defendants' motions in limine nos. 5, 6, 7, 8, 10, and 11 are DENIED;

c.      Defendants' motion in limine no. 3 is GRANTED in respect to the November 11, 2010, and September 25, 2010 e-mails and DENIED in respect to the November 13, 2010 e-mail;

d.      Defendants' motion in limine no. 9 is GRANTED in respect to Mr. Stein testifying to safety violations reported by Plaintiff Oyarzo and the manner the reduction in force should have occurred; and DENIED in respect to Mr. Stein testifying as to safety issues and the qualifications of the firefighters; and

e.      Defendants' motion in limine no. 13 is GRANTED in respect to Plaintiff Oyarzo's rank, evidence of retaliation in support of Plaintiff Oyarzo, adverse actions taken by Defendant Powers, evidence of a custom, policy, or practice within TFD, and reference to Plaintiff Hart's lay off as punitive action under the FPBR; and DENIED in respect to evidence of Defendant Hockett's affirmative conduct.

IT IS SO ORDERED.

Dated:   **October 18, 2013**

_____
UNITED STATES MAGISTRATE JUDGE