# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BENJAMIN C. OYARZO and NICHOLAS HART,<br><br>Plaintiffs,<br><br>v.<br><br>TUOLUMNE FIRE DISTRICT, KENNETH HOCKETT, and TONEY POWERS,<br><br>Defendants. | Case No.  1:11-cv-01271-SAB<br><br>ORDER RE CROSS MOTIONS TO AMEND JUDGMENT<br><br>(ECF Nos. 240, 242, 258, 261, 271) |

**I.**

**RELEVANT PROCEDURAL HISTORY**

Trial in this action commenced on December 3, 2013.  (ECF No. 199.)  On December 18, 2013, the jury returned verdicts 1) for Plaintiff Oyarzo and against Defendant Tuolumne Fire District ("TFD") for violation of the Fair Labor Standards Act; 2) for Plaintiff Hart and against Defendant Hockett for retaliation in violation of the First Amendment; 3) for Plaintiff Hart and against Defendant TFD for violation of the Firefighters' Procedural Bill of Rights; 4) for Defendant Powers and against Plaintiff Hart for retaliation in violation of the First Amendment; and 5) for Defendant TFD and against Plaintiff Hart on all other state law claims.  (ECF Nos. 218, 129.)

Judgment was entered in favor of Plaintiff Hart on December 20, 2013.  (ECF No. 228.)

1 Judgment was entered in favor of Plaintiff Oyarzo on January 6, 2014.  (ECF No. 237.)  On
2 January 15, 2014, the December 20, 2013 judgment was amended to reflect the judgments in
3 favor of Defendant TFD.  (ECF No. 239.)  On January 16, 2014, Defendant Hockett filed a
4 motion to amend the judgment or in the alternative request or remittitur or for partial new trial.
5 (ECF No. 240.)  On January 17, 2014, Plaintiff Hart filed a motion to amend the judgment.
6 (ECF No. 242.)  On February 4, 2014, Defendant Hockett filed an opposition to the motion to
7 amend the judgment.  (ECF No. 258.)  On February 5, 2014, Plaintiff Hart filed an opposition to
8 Defendant Hockett's motion to amend judgment.  (ECF No. 261.)  Defendant Hockett filed a
9 reply on February 12, 2014.  (ECF No. 271.)

10       The Court heard oral arguments on February 19, 2014.  Counsel Shannon Seibert and
11 Joseph Bautista appeared for Plaintiff Hart and counsel Anthony Abbott appeared for Defendant
12 Hockett.  Having considered the moving, opposition and reply papers, the declarations and
13 exhibits attached thereto, arguments presented at the February 19, 2014 hearing, as well as the
14 Court's file, the Court issues the following order.

15 **II.**
16 **LEGAL STANDARD**
17     **A.**    **Motion for New Trial**

18       Pursuant to Rule 59 of the Federal Rules of Civil Procedure, a court has discretion to
19 grant a new trial on all or some of the issues "after a jury trial, for any reason for which a new
20 trial has heretofore been granted in an action at law in federal court." Fed .R. Civ. P. 59(a)(1);
21 Kode v. Carlson, 596 F.3d 608, 612 (9th Cir. 2010).  Rule 59 does not specify the grounds upon
22 which a motion for new trial can be granted, so based upon the language of the statute, the court
23 is "bound by those grounds that have been historically recognized." Zhang v. American Gem
24 Seafoods, Inc., 339 F.3d 1020, 1035 (9th Cir. 2003).  "Historically recognized grounds include,
25 but are not limited to, claims "that the verdict is against the weight of the evidence, that the
26 damages are excessive, or that, for other reasons, the trial was not fair to the party moving."
27 Molski v. M.J. Cable, Inc., 481 F.3d 724, 729 (9th Cir. (2007) (quoting Montgomery Ward &
28 Co. v. Duncan, 311 U.S. 243, 251 (1940)); see also Passantino v. Johnson & Johnson Consumer

1 Products, Inc., 212 F.3d 493, 510 n.15 (9th Cir. 2000) (quoting Ace v. Aetna Life Ins. Co., 139 F.3d 1241, 1248 (9th Cir. 1998) (The trial court may only grant a new trial where "the verdict is contrary to the clear weight of the evidence, is based upon false or perjurious evidence, or to prevent a miscarriage of justice.").

The district court judge has the right and duty to weigh the evidence as he saw it and, even where supported by substantial evidence, set aside the jury verdict, if in his conscientious opinion, the verdict is contrary to the clear weight of the evidence or, in the sound discretion of the judge, to prevent a miscarriage of justice. Murphy v. City of Long Beach, 94 F.2d 183, 187 (9th Cir. 1990.)  The trial court abuses its discretion by ordering a new trial if the jury's verdict is not clearly against the weight of the evidence. Kode, 596 F.3d at 613.  However, "even if substantial evidence supports the jury's verdict, a trial court may grant a new trial if the verdict is contrary to the clear weight of the evidence." Id.

**B.     Motion to Amend**

A motion to amend judgment to include interest is governed by Rule 59(e), which allows the court to alter or amend judgment within 28 days after the entry of judgment. McCalla v. Royal MacCabees Life Ins. Co., 369 F.3d 1128, 1128 (9th Cir. 2004).  There are four grounds upon which a court can grant relief under Rule 59(e): "1) the motion is 'necessary to correct manifest errors of law or fact upon which the judgment is based;' 2) the moving party presents 'newly discovered or previously unavailable evidence;' 3) the motion is necessary to 'prevent manifest injustice;' or 4) there is an 'intervening change in controlling law.' " Turner v. Burlington Northern Santa Fe R.Co., 338 F.3d 1058, 1063 (9th Cir. 2003) (quoting McDowell v. Calderon, 197 F.3d 1253, 1255 (9th Cir.1999)).

### III.

### DISCUSSION

**A.     Defendant Hockett's Motion to Amend Judgment or for Remittitur**

1.     Jury Award of Damages Must be Vacated

Defendant Hockett moves to amend the judgment or in the alternative for remittitur on the grounds that the jury did not follow the Court's instruction, but awarded damages in an

3

1  amount based on holding Defendant Hockett liable for Plaintiff Hart's termination.  (Mem. of P
2  & A in Support of Df. Hockett's Mot. to Alter or Amend the Amended Judgment 1, ECF No.
3  240-1.)  Defendant Hockett contends that the jury committed a manifest error of law by failing to
4  follow the Court's jury instructions.  (Id. at 3-6.)  Defendant Hockett moves to have the Court
5  amend the judgment to only $1.00 in nominal damages.  (Id. at 7-8.)  Defendant Hockett requests
6  the Court exercise its discretion and reduce the award to $1.00 in nominal damages without
7  offering Plaintiff Hart a new trial.  (Id. at 8-10.)  In the alternative, if the Court finds that a new
8  trial should be granted, Defendant Hockett moves for a new trial solely on the issue of economic
9  damages.  (Id. at 10-13.)

10  Plaintiff Hart opposes the motion on the grounds that Defendant Hockett has failed to
11  prove that the jury committed clear error; Defendant Hockett has waived all objections to the
12  jury instructions and verdict form;[1] and the jury's award did not result in manifest injustice.
13  (Opp. to Mot. to Alter or Amend Judgment 3, ECF No. 261.)  Defendant Hockett replies that he
14  does not contest the jury instructions, but that it was Plaintiff's improper argument that invited
15  error and caused the confusion by asking the jury to find Defendant Hockett liable for the post-
16  termination damages.[2]  (Reply 9-14, ECF No. 271.)

17  After finding that Defendant Hockett had retaliated against Plaintiff Hart in violation of
18  the First Amendment, the jury awarded economic damages in the amount of $290,767.00 and no
19  non-economic damages.  (Special Verdict for Plaintiff Hart 1-4, ECF No. 219.)  During the
20  second phase of the trial, the jury awarded Plaintiff Hart $1.00 in punitive damages against
21  Defendant Hockett.  (Special Verdict-Second Phase, ECF No. 220.)  Defendant Hockett contends
22  that the jury awarded Plaintiff Hart the amount of economic damages that Dr. Mahla, Plaintiff
23  Hart's expert, testified was the amount of economic damages that Plaintiff Hart would be entitled
24  to for his lost wages from January 1, 2011 to December 31, 2013, and his future wages from

---

25  [1] The Court declines to address Plaintiff Hart's argument that Defendant Hockett waived all objections to the jury
26  instructions and verdict form as it is clear that Defendant Hockett is not challenging the instructions or the verdict
   form, but that the jury failed to follow the jury instructions.

27  [2] Post-termination damages in this instance refers to Plaintiff Hart's wage loss from the date of termination,
   December 31, 2010, to December 31, 2013, wage loss from January 1, 2014 through retirement, and post-retirement
28  benefits.

4

1  January 1, 2014 through retirement. (ECF No. 240-1 at 6.) Defendant Hockett argues that the
2  record is devoid of any evidence of pre-separation economic loss by Plaintiff which could
3  support any award of compensatory economic damages against Defendant Hockett. (Id. at 8.)

4  During the trial of this action, Plaintiff's expert, Doctor Mahla, testified that he was asked
5  to estimate the economic impact on Plaintiff Hart's earnings and benefits over time based upon
6  his termination. (Transcript of Testimony of Charles Mahla 14:23-25, ECF No. 233.) Dr. Mahla
7  compared what Plaintiff Hart's earnings and benefits would look like had he not been terminated
8  by Defendant TFD with his forecast of the future now that he is working for Northwest Log
9  Scalers. (Id. at 15:3-13.) In comparing the two figures, Dr. Mahla came up with an amount that
10 would be his opinion of the economic harm to Plaintiff Hart. (Id. at 15:14-18.)

11 Dr. Mahla assumed that Plaintiff would work until age 55, the average PERS retirement
12 age for public safety officers. (Id. at 18:10-15.) Additionally, he considered Plaintiff's life
13 expectancy to be 78.1 years of age. (Id. at 18:18-24.) First, Dr. Mahla testified that, based upon
14 the assumption that Plaintiff would have received a promotion to captain, he would be making
15 $18.00 to $20.00 per hour and, inflating the wage for two years, he based the calculation on
16 $20.46 per hour. (Id. at 17:1-7.) Plaintiff's past wage lost was $78,064.00, future work life was
17 $373,459.00, and the present value of his retirement loss was $619,392.00. (Id. at 23:5-7.)

18 Dr. Mahla testified to a second scenario in which Plaintiff Hart did not receive the
19 promotion to captain. (Id. at 26:4-7.) Under this scenario, Plaintiff Hart's past wage loss would
20 still be $78,064.00. (Id. at 26:19-23.) The future wage loss would be $212.703.00. (Id. at
21 26:24-27:1.) The value of his retirement loss would drop to $474,305.00. (Id. at 27:2-4.) The
22 combination of this past wage loss and future wage loss is $290,767.00.

23 During the hearing on this matter, Plaintiff conceded that there was no evidence
24 presented at trial that Plaintiff Hart lost any wages, earnings or benefits prior to his termination
25 on December 31, 2010.[3]  However, the jury awarded Plaintiff Hart economic damages of

---

26 [3] Plaintiff Hart's testimony at trial established that he did not lose any wages or benefits prior to his termination.

27  Q: And with respect to your layoff, you were paid through the end of the month, is that correct?
    A: That's - -
28  Q: Through the end of December?

5

$290,767.00. (ECF No. 219 at 4.) Looking to the testimony of Dr. Mahla and combining the past wage loss, $78,064, and future wage loss, $212.703, which Dr. Mahla testified Plaintiff Hart suffered under the second scenario, the total amount of post termination lost wages is $290,767.00. This is the exact amount awarded as economic damages by the jury.

Plaintiff Hart concedes that the amount the jury awarded him is the same as the amount of post-termination wage loss testified by Dr. Mahla as damages, but argues that the jury could have inferred that the existence of the disciplinary documents in his permanent personnel file caused him harm due to his inability to find a permanent job as a firefighter. (ECF No. 261 at 3.) Plaintiff argues that this is a more plausible explanation for the amount of damages given that Defendant Hockett testified that he did not consider removing the documents from Plaintiff Hart's file. (Id. at 4.) However, there was no evidence presented at trial that the documents in Plaintiff Hart's personnel file had any impact on his ability to find work as a firefighter. Further, Plaintiff Hart does not address that awarding post-termination wage loss as damages violated the instructions that were provided to the jury.

The Court is aware that it is to respect the jury's function as factfinder and to give significant deference to the jury's verdict. Nevertheless, the Court has a duty to weigh the evidence as he saw it and to set aside the verdict if it is contrary to the clear weight of the evidence or is necessary to prevent a miscarriage of justice. Murphy, 94 F.2d at 187.) Inconsistencies may arise where the jury returns a verdict that clearly violates the court's jury instructions. Zhang, 339 F.3d at 1037.

It appears clear to the Court that, in this instance, the jury failed to follow the jury instructions and awarded Plaintiff Hart the amount of his post-termination wage loss for Defendant Hockett's violation of the First Amendment.

During the trial, the jury was instructed that:

---

A: That's correct.
Q: And you didn't have to work any more shifts?
A: I was told not to.
Q: And you were paid just as if you did though?
A: That's correct.

(Cross Examination of Plaintiff Hart 137:24-138:7, ECF No. 235.)

>Defendant Hockett was a member of the Tuolumne Fire District Board. Board members are entitled to what is called absolute immunity for all conduct reasonably related to their functions as a board member. Thus, you cannot hold Defendant Hockett liable for the decision to terminate Plaintiff Hart. Evidence concerning this action was admitted solely for a particular limited purpose. This evidence can be considered by you as evidence that the termination was adverse action under Plaintiff Hart's Labor Code Section 6310 claim. But you cannot decide that Defendant Hockett violated Plaintiff Hart's First Amendment rights based on evidence that Defendant Hockett was involved in the decision to terminate Plaintiff Hart.

(Jury Instruction 24, ECF No. 215.)

The jury was also instructed that:

>In determining Plaintiff Hart's damages for his First Amendment claim against Defendant Hockett you should consider:
>
>1. the reasonable value of wages, earnings, and benefits lost to December 31, 2010; and
>
>2. the mental and emotional pain and suffering experienced and which with reasonable probability will be experienced in the future.

(Jury Instruction No. 29, ECF No. 215.) Considering the evidence presented at trial and the damage award returned by the jury, the Court is left with the definite and firm conviction that the jury awarded damages to Plaintiff Hart by mistakenly considering his post-termination wage loss.

During the February 19, 2014 hearing, Plaintiff Hart argued that there is no evidence that the jury did not award the $290,767.00 as emotional distress damages. However, the verdict form reflects that the jury found Plaintiff Hart's economic damages to be $290,767.00 and no non-economic damages were awarded. (ECF No. 219 at 4.) This is evidence that the jury was awarding damages for Plaintiff Hart's economic loss. Although Plaintiff now argues that the jury should have been instructed on the difference between economic and non-economic damages, Plaintiff Hart never asked for such an instruction during trial of this matter.

The Court is not persuaded by Plaintiff Hart's argument that the jury meant to give damages of $290,767.00 for emotional distress but placed the amount in the wrong section on the verdict form due to confusion on the meaning of non-economic damages. Reviewing the trial in this matter, it is clear that from the opening statements through the end of trial Plaintiff Hart was

1  stressing that his post-termination damages should be awarded against Defendant Hockett.  In

2  opening statements, Plaintiff Hart's counsel stated:

> Mr. Hockett arrived on the board and immediately decided also that Mr. Oyarzo had to go.  Needed to be removed from Tuolumne Fire District.  And unfortunately for Hart, wonderfully, but unfortunately for Hart, he submitted a letter of support to the board, a letter in support of Mr. Oyarzo on August 25th, 2010, eight days after Mr. Hockett had been seated.  And from that point on Mr. Hart had the target on his back.  (Transcript of Proceedings, Partial Jury Trial – Day One ("T.R.") 9:22-10:4, ECF No. 264.)

. . .

> Mr Oyarzo had to go out on medical leave three weeks later, after returning to work, and this is when Mr. Hockett saw his chance to get rid of Mr. Hart.  (T.R. 11:11-13.)

. . .

> So an election comes along.  As Mr. Hockett is building the case to terminate Mr. Hart for cause, he now has two disciplinary letters that he put in his file.  (T.R. 13:19-22.)

. . .

> But through the fall, Mr. Hockett had proposed various scenarios of trying to get rid of Mr. Hart and Mr. Oyarzo.  Now Mr. Oyarzo he couldn't really target, because he was out on leave.  Couldn't get him caught up in something that he could – that Mr. Hockett could twist to make it look like Mr. Oyarzo had done something wrong.  He wasn't there to blame anything on.  Mr. Hart was.

> So Mr. Hockett had a –he had a great plan.  We have the budget, and the budget gives us cover, because everyone knows reductions in force have to happen during tough times, tough economic times, and he decided he would get Mr. Hart set up to get him fired for cause while he would use the budget to justify terminating Mr. Oyarzo.  That was his plan.  (T.R. 14:7-19.)

. . .

> And between the time the election happened in November of 2010 and they were seated on December 13th of 2010, Mr. Hockett had convinced four of the five to terminate Mr. Hart and demote Mr. Oyarzo.  (T.R. 15:6-9.)

. . .

> Within 80 minutes of being seated, the new board never having seen a budget, having no idea how much money they need to save, having no idea what Nick Hart's – Mr. Hart's salary is, vote four to one to reorganize the department.

> And the reorganization of the department consisted of laying off Mr. Hart because he was the most recently hired, which they all knew, and all admitted to, and demoting Mr. Oyarzo from captain to engineer. . . .  (T.R. 16:12-19.)

. . .

8

> At the end of this for Mr. Hart, we're going to ask you to make it right. We're going to ask you to make it right for the wages that he has lost since being fired from Tuolumne Fire District, three years ago now, the future wages that he will lose based largely, as you will see, on the retirement that he would have vested in February of 2014.
>
> That was his plan: take care of himself, take care of his family and have a safe future for himself and his family. And Tuolumne Fire District took that from him. Toney Powers and Mr. Hockett took that from him. So at the end of this, we will ask you to make that right. (T.R. 17:16-17:1.)

Based upon Plaintiff Hart's counsel's opening statements and the amount of testimony elicited regarding the board voting to terminate Plaintiff Hart and Plaintiff Oyarzo, the Court determined that it was necessary to include a jury instruction that Defendant Hockett was entitled to absolute immunity for the termination of Plaintiff Hart and that the termination could not be considered in deciding the First Amendment claim against Defendant Hockett.

Generally, the Court assumes that the jury will follow the instructions that are provided. However, during closing argument, Plaintiff Hart's counsel continued to set forth arguments that Defendant Hockett was responsible for the termination of Plaintiff Hart. Counsel argued:

> The evidence has showed throughout this trial, through the previous two weeks, well an extensive record of retaliation against Mr. Hart and targeting of Mr. Hart. (Partial Transcript of Proceedings, Partial Jury Trial – Day 9 ("T.R.2") 12:2-4, ECF No. 265.)
>
> . . .
>
> On December 13th a new board was seated. Again, three new members coming on ultimately. And within 90 minutes of being seated, relying only on the representations made by Mr. Hockett, because they weren't provided with any other information. They weren't provided with the qualifications of any of the firefighters. They weren't provided with a budget. Mr. Miller testified to that, Mr. McKernan testified to that. No information was provided that they could rely on, other than the representations made by Mr. Hockett.
>
> And based on that information, the board voted within 90 minutes of being seated to reorganize the department by terminating Mr. Hart and demoting Mr. Oyarzo from captain to firefighter, a demotion no firefighter that intended to continue on in the firefighting industry could ever accept.
>
> Most of these facts that I've covered are, for the most part undisputed. What is disputed is the motivation of the defendants. What drove them to do what they did?
>
> When taking each of the acts that they have taken against Mr. Hart, Mr. Powers individually against Mr. Hart, Mr. Hockett individually against Mr. Hart, and the

9

district through Mr. Hockett and Mr. Powers against Mr. Hart. The defendants have not admitted to their motivation. They have not admitted they were motivated by Mr. Hart's support for Oyarzo or admitted they were motivated by Hart's complaints regarding safety conditions in the workplace, and that leaves us to establish -- has left us to establish the defendants' motivation through circumstantial evidence. (T.R.2 18:15-19:16.)

. . .

The final area where things just don't add up with regard to the defendants' explanations for their actions is the termination of Mr. Hart. Mr. Orr testified that he suggested in November 2010 that reorganization -- that reduction in force be looked at. And the way to do that, when you have that small of an agency in that high risk of an area is to look at qualifications. Who's the most experience? Who's the most qualified? Who can best serve the public?

Mr. Hockett, of course, did not agree with that and spoke out against that, and Mr. Hocket -- the final – the next meeting was the one that provided the information on the budget to the district on which they made their decision to terminate Mr. Hart.

Now a reduction in force, it's undisputed the Tuolumne Fire District as experiencing budgetary difficulties. Of course they were, it as 2009 -- 2010 at that point. Most of us were going through, and most agencies were experiencing budgetary difficulties. But experiencing budgetary difficulties does not give agencies an excuse to target somebody for retaliatory motives. Or for retaliatory motivations.

The fact that the vote targeted not only Mr. Hart for termination, but Mr. Oyarzo for demotion from captain to firefighter, the budget provides absolutely no explanation for that. The fact that Mr. Powers was made acting chief three and-a-half months after this vote to equalize everybody, the budget provides no explanation for that. (T.R.2 30:22-31:23.)

During closing counsel addressed Plaintiff Hart's emotional distress damages during the summer of 2010 stating:

Throughout that time Mr. Hart was stripped of nearly all of his responsibilities, administrative and otherwise. His navigation -- driving the engine, navigation -- well driving the engine went to Mr. Powers and the engineer normally then would be in the front seat, navigational.

While it may sound rather -- it may sound a bit petty. It's not. Not in a hierarchal structure like a fire department, not where authority has to be respected and chains of command have to be kept. And all of Mr. Hart's duties and all of Mr. Hart's responsibilities, save payroll, reporting to the board, were stripped of him and given -- either subsumed by Mr. Powers or given to interns.

And that's the environment he lived in for two and a half months. He carried -- it was incredibly stressful for him as he testified to. He carried the stress home with him. It affected his relationship with his wife and his -- who he was raising his newborn child with at that time. It had an emotional impact and it had a life impact on him. (T.R.2 at 14:12-15:4.)

10

Plaintiff Hart's counsel then went on to address that Defendant Hockett was seated on the board in August 17, 2010. (Id. at 15:5-13.) After going through the evidence presented during trial, Counsel explained to the jury the three types of damages to be considered.

> Now, with regard to damages, you will be asked to calculate the amount of damages that are owed to Mr. Hart for the various violations of law with regard to him, and as the Court has instructed you, there are three basic areas. There is the reasonable value of wages lost to the present time, and that means to basically today. There is the reasonable value of wages -- of future lost wages. And then there is the emotional pain and suffering, and of pain – what we call pain and suffering, it's the mental, physical and emotional suffering that Mr. Hart has had to experience as a result of the actions taken against him. (T.R.2 34:4-14.)

Counsel then went on to explain the economic damages that Plaintiff Hart was seeking for his lost wages. (T.R.2 34:15-38:1; 52:9-14.) Counsel's closing arguments focused on the economic damages and never requested the jury to award any amount of non-economic damages.

It is clear to the Court that the jury awarded Plaintiff Hart economic damages for his post-termination wage loss in violation of the jury instructions and the error was not due to confusion as to the meaning of economic damages.

In those rare instances where it is sufficiently certain that the jury award was based on improperly considered evidence, the judgment must be reversed. In re First Alliance Mortg. Co., 471 F.3d 977, 1002-03 (9th Cir. 2006). Since Defendant Hockett is entitled to absolute immunity for the decision to terminate Plaintiff Hart based upon his position as a Board Member for TFD, he is not liable for any damages flowing from the termination of Plaintiff Hart. Therefore, the jury was instructed that Plaintiff Hart's economic damages would be the reasonable value of wages, earnings, and benefits lost to December 31, 2010

The jury is bound to follow the law as it is set forth by the Court. In re First Alliance Mortg. Co., 471 F.3d at 1002-03. The jury found that Defendant Hockett had retaliated against Plaintiff Hart by 1) requiring him to work shifts by himself; 2) disciplining him for allowing Nick Burns to work at the firehouse; and 3) disciplining him for not attending the funeral of former Fire Chief John Burns. (ECF No. 219 at 2-3), and was instructed that in determining damages they could consider the reasonable value of the wages, earnings, and benefits lost by Plaintiff Hart to December 31, 2010, (ECF No. Jury Instruction No. 29, ECF No. 215).

The jury awarded damages for post-termination wage loss, however there is an absence of causation between the retaliatory acts which were found by the jury and the future wage loss on which the jury based its award.  See New York, L.E. & W.R. Co. v. Estill,174 U.S. 591, 614 (1893) (a defendant is liable only for the damages directly traceable to its conduct); Corpus v. Bennett, 430 F.3d 912, 915 (8th Cir. 2005) (internal punctuation and citations omitted) ("Whatever the constitutional basis for § 1983 liability, such damages must always be designed to compensate injuries caused by the constitutional deprivation.").  Since the jury based its award of damages on the expert's testimony regarding the economic damages that Plaintiff Hart had incurred from January 1, 2011 through the date he would be expected to retire, the jury based its award on an improper theory of damages.  The jury did not follow the law in deciding Plaintiff Hart's economic damages award.  Therefore, the award of economic damages must be vacated.

Plaintiff Hart did not present any evidence at trial that he sustained any economic loss prior to his termination on December 31, 2010 and during oral argument at the February 19, 2014 hearing, Plaintiff Hart's counsel conceded that no such evidence was presented.  The jury only found economic loss for the post termination period.  Accordingly, the Court shall vacate the award of economic damages, and award nominal damages of $1.00 for the violation of Plaintiff Hart's First Amendment rights by Defendant Hockett.

2.     Vacating Damages Does Not Require a New Trial

Defendant Hockett moves to amend the judgment based upon the error of the jury without the grant of a new trial under Rule 59 of the Federal Rules of Civil Procedure.  (ECF No. 240-1 at 2.)  Plaintiff argues that Defendant Hockett has not shown that there was a clear error by the jury and the challenge to the jury award is merely speculation as to the jury's intention.  (ECF No. 261 at 3-7.)  Plaintiff Hart further argues that Defendant Hockett waived the right to appeal the verdict by failing to object to the jury instructions and verdict form before the jury was dismissed.  (Id. at 7-10.)  Here, it is clear that Defendant Hockett is not challenging the jury instructions and the verdict form, but the jury's failure to follow the instructions that were given.

Generally, the Seventh Amendment requires the party being subject to remittitur to be offered the option of accepting the reduced damages or having a new trial.  However, where the

error in the verdict is for an amount not permitted by law a new trial is not required. New Orleans Ins. Co. v. Piaggio, 83 U.S. 378, 387-88 (1872); Minks v. Polaris Industries, Inc., 546 F.3d 1364, 1370 (Fed. Cir. 2008).

Defendant Hockett contends that the jury committed a manifest error of law by not following the Court's jury instructions. (ECF No. 240-1 at 3-7.) While the Court does not find any Ninth Circuit case which directly addresses this issue, in Johansen v. Combustion Engineering, Inc., 170 F.3d 1320 (11th Cir. 1999), the Eleventh Circuit considered whether the trial court could unilaterally reduce the jury award of punitive damages as excessive. 170 F.3d at 1328. The court recognized that the Seventh Amendment prohibits the trial court from re-examination of the jury's determination of the facts, which includes the injury suffered by the plaintiff. Id. Therefore, a federal court may not "according to its own estimate of the amount of damages which the plaintiff ought to have recovered, . . . enter an absolute judgment for any other sum than that assessed by the jury[,]" because it would deprive the parties of the constitutional right to a jury. Id. (quoting Kennon v. Gilmer, 131 U.S. 22, 29 (1889)).

The Seventh Amendment requires that no judgment for a remittitur can be entered without the parties consent; so if the court finds the jury's verdict to be excessive, and the party does not consent to remittitur, a new trial must be ordered. Johansen, 170 F.3d at 1329. However, "where a portion of a verdict is for an identifiable amount that is not permitted by law, the court may simply modify the jury's verdict to that extent and enter judgment for the correct amount." Id. at 1330. The appellate court held that where the Constitution requires a reduction, the plaintiff's consent is not required and the district court may enter the amount as a matter of law. Id. The Court's authority to do this is under Rule 50 of the Federal Rules of Civil Procedure, not Rule 59, and the Seventh Amendment is not implicated in this legal exercise. Id.

In coming to this decision, the Eleventh Circuit recognized that the Tenth and Second Circuits may not agree with this approach, and had decided to offer plaintiffs a choice between a reduced verdict and a new trial to avoid any conflict with the Seventh Amendment.[4] Johansen, at

---

[4] However, in an unpublished decision, Cartel Asset Management v. Ocwen Financial Corp., 249 Fed.Appx. 63, at *81 (10th Cir. 2007), the Tenth Circuit indicated that the decision of whether a new trial was required depended upon whether the reduction in damages was based on a determination that the law does not permit the award.

1332.  The Eleventh Circuit found that since deciding the issue did not require the court to reexamine any facts, and they were merely adjusting the verdict to the maximum that the law allows, no trial was needed.  Id.

Without addressing whether the action was taken under Rule 50 or 59, in Corpus v. Bennett, 430 F.3d 912 (8th Cir. 2005), the Eighth Circuit considered whether the district court had the discretion to reduce an award of nominal damages from $75,000 to $1.00 because the alleged use of force was not a direct cause of the plaintiff's injuries.  430 F.3d at 915.  The appellate court, assuming without deciding that the issue had been preserved for appeal, found that the district court did not err in reducing the damages because it had a duty to make the award conform with the law.  Id. at 915 n.4, 916.  The appellate court explained that the reduction was not a remittitur, which a substitution for the jury's decision regarding the appropriate amount of damages, but was a constitutional reduction because the law does not permit the award.  Id. at 917.  Since the court did not substitute its opinion for the verdict returned by the jury, but reduced the award to what was required to conform with the law, the Seventh Amendment was not implicated and no new trial was required.  Id.

Similarly, in Tronzo v. Biomet, Inc., 236 F.3d 1342 (Fed. Cir. 2001), the appellate court held that reducing the amount of compensatory damages did not require a new trial where the reduction awarded the total amount that the plaintiff could receive given the lack of competent evidence in the record.  236 F.3d at 1351.

In this instance, the Court is not entering a remittitur based upon its determination that the jury award against Defendant Hockett was excessive.  To the extent that Plaintiff Hart's objection could be construed to be that Defendant Hockett waived his right to appeal the damage award by not objecting prior to the jury being dismissed, when the jury returned the verdict in this instance, Defendant Hockett did not have an opportunity to object to the amount of the damages award on the basis that the jury did not follow the jury instructions.  The error made by the jury was not apparent until Defendant Hockett had the opportunity to review the testimony of Dr. Mahla and compare it with the jury's verdict that the basis for the objection became clear.

The Court finds that Defendant Hockett did not waive his objection by failing to raise the

1 issue prior to the jury being dismissed. The economic damage award must be vacated as a matter
2 of law because the jury awarded damages for which causation is lacking. The jury failed to
3 follow the instructions provided in determining Plaintiff Hart's damages for the violation of his
4 First Amendment rights.

5 In this instance, the Court is not exercising its discretion to reduce an excessive jury
6 award, but finding that the jury awarded damages that are not permitted by law. A constitutional
7 reduction in the amount of damages occurs where the court determines that the law does not
8 allow the award of damages. Johansen, 170 F.3d at 1331. This Court is not substituting its
9 opinion for that of the jury, but is merely vacating the award to conform with the law. Since the
10 vacatur here is one of law and not of fact it does not require a new trial. Estill, 147 U.S. at 622;
11 Johansen, 170 F.3d at 1330.

### B. Plaintiff Hart's Motion to Amend Judgment

13 Plaintiff Hart brings a motion to include post-judgment interest in the judgment. (ECF
14 No. 242.) Defendant Hockett objects to the motion on the grounds that it is premature due to the
15 outstanding motion to amend and if the Court grants Defendant Hockett's motion then Plaintiff
16 Hart's motion may become moot. (ECF No. 258.)

17 Under 28 U.S.C. § 1961(a) post judgment interest is mandatory. Barnard v. Theobald,
18 721 F.3d 1069, 1078 (9th Cir. 2013). Section 1961(a) provides that "[s]uch interest shall be
19 calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year
20 constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve
21 System, for the calendar week preceding the date of the judgment."

22 The purpose of postjudgment interest is to compensate the successful litigant for being
23 deprived of compensation for the loss from the time between the ascertainment of the damages
24 and the payment by the opposing party. Tinsley v. Sea-Land Corp., 979 F.2d 1382, 1383 (9th
25 Cir. 1992). The judgment on damages needs to be supported by the evidence to have been
26 ascertained in any meaningful way. Tinsley, 979 F.2d at 1383. In this instance, Plaintiff Hart is
27 entitled to post-judgment interest from the date of entry of the judgment.

28 The Court shall issue an amended judgment consistent with this opinion and it will

15

include post-judgment interest.

## III.
## CONCLUSION AND ORDER

Based on the foregoing, IT IS HEREBY ORDERED that:

1. Defendant Hockett's motion to amend the judgment is GRANTED as follows:

    a. The jury verdict for economic damages of $290,767.00 is VACATED;

    b. Plaintiff Hart is AWARDED $1.00 in nominal damages; and

2. Plaintiff Hart's motion to amend the judgment to include post-judgment interest is GRANTED.

IT IS SO ORDERED.

Dated: **February 24, 2014**

UNITED STATES MAGISTRATE JUDGE