# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BENJAMIN C. OYARZO and NICHOLAS HART, | Case No.  1:11-cv-01271-SAB |
| Plaintiffs, | ORDER GRANTING IN PART PLAINTIFF OYARZO'S MOTION FOR ATTORNEY FEES |
| v. | (ECF Nos. 253, 278, 286) |
| TUOLUMNE FIRE DISTRICT, KENNETH HOCKETT, and TONEY POWERS, | ORDER DENYING PLAINTIFF HART'S RENEWED MOTION FOR ATTORNEY FEES |
| Defendants. | (ECF Nos. 277, 289, 294, 300, 302) |

## I.

## BACKGROUND

Plaintiff Oyarzo filed a complaint in this action on March 18, 2011, against Defendants Tuolumne Fire District ("TFD"), Joseph Turner, Darlene Hutchins, Kenneth Hockett, and Brian Machado alleging violations of the Fair Labor Standards Act, the First and Fourteenth Amendments, and California law.  (ECF No. 1.)  Plaintiff Hart filed an action on March 24, 2011, against Defendants TFD, Joseph Turner, Toney Powers, Kenneth Hockett, and Brian Machado alleging violations of the Fair Labor Standards Act ("FLSA"), the First and Fourteenth Amendments, and California law.  Hart v. Tuolumne Fire District, 2:11-cv-00812-FCD-EFB (E.D. Cal.).  On September 2, 2011, the Court granted the parties stipulation that the two actions

1  be consolidated.  (ECF No. 24.)

2       On September 19, 2011, an amended complaint was filed.  In the amended complaint,

3  Plaintiffs Oyarzo and Hart alleged claims against all defendants for unlawful deterrence and

4  retaliation in violation of the First Amendment; and against Defendant TFD for violation of the

5  FLSA, denial of due process in violation of the Fourteenth Amendment, and state law claims for

6  retaliation in violation of California Labor Code sections 6310 and 1102.5, the Firefighter's

7  Procedural Bill of Rights, California Government Code section 3250, et. seq., and age and

8  marital status discrimination in violation of the California Fair Employment and Housing Act

9  ("FEHA").  Both Plaintiffs brought claims for harassment in violation of the FEHA.  Plaintiff

10  Oyarzo asserted harassment claims against Defendants Turner and Hutchins; and Plaintiff Hart

11  asserted harassment claims against Defendants Hockett and Powers.

12       On April 19, 2013, an order issued dismissing Defendant Machado pursuant to the

13  stipulation of the parties.  (ECF No. 64.)  The remaining defendants filed motions for summary

14  judgment on April 22, 23, 24, and 26, 2013.  (ECF Nos. 66-67, 69-72.)  Following resolution of

15  Defendants' motions for summary judgment, the action was proceeding against Defendant TFD

16  on Plaintiff Oyarzo and Hart's claims for violation of the FLSA by failing to compensate them

17  for all hours worked and violation of the Firefighters' Procedural Bill of Rights ("FPBR"); and

18  on Plaintiff Hart's claims against Defendants Hockett and Powers for violation of the First

19  Amendment for his support of Plaintiff Oyarzo, and against Defendant TFD for retaliation in

20  violation of California Labor Code section 6310.  (ECF No. 107.)  On May 3, 2013, Plaintiff

21  Hart's FLSA claim settled.  The settlement included attorney fees and costs.  (ECF No. 74.)

22       Trial in this action commenced on December 3, 2013.[1]  (ECF No. 199.)  On December

23  18, 2013, the jury returned verdicts 1) for Plaintiff Oyarzo and against Defendant TFD for

24  violation of the FLSA; 2) for Plaintiff Hart and against Defendant Hockett for retaliation in

25  violation of the First Amendment; 3) for Defendant Powers and against Plaintiff Hart for

26  retaliation in violation of the First Amendment; 4) for Plaintiff Hart and against Defendant TFD

27  for violation of the FPBR and 5) for Defendant TFD and against Plaintiff Hart for violation of

28
_____
[1] Plaintiff Oyarzo abandoned his claim for violation of the FPBR prior to trial.

1  California Labor Code section 6310.  (ECF Nos. 218, 129.)

2        Judgment was entered in favor of Plaintiff Hart on December 20, 2013.  (ECF No. 228.)

3  Judgment was entered in favor of Plaintiff Oyarzo on January 6, 2014.  (ECF No. 237.)  On

4  January 15, 2014, the December 20, 2013 judgment was amended to reflect the judgments in

5  favor of Defendant TFD.  (ECF No. 239.)  On January 16, 2014, Defendant Hockett filed a

6  motion to amend the judgment.  (ECF No. 240.)  On January 17, 2014, Plaintiff Hart filed a

7  motion to amend the judgment and a motion for attorney fees.  (ECF Nos. 241, 242.)

8        On February 3, 2014, Plaintiff Oyarzo filed a motion for attorney fees.  (ECF No. 253.)

9  Finding Plaintiff Hart's request for attorney fees to be excessive, on February 3, 2014, the Court

10 denied Plaintiff Hart's motion for attorney's fees without prejudice.  (ECF No. 250.)  On

11 February 4, 2014, Defendant Hockett filed an opposition to Plaintiff Hart's motion to amend the

12 judgment.  (ECF No. 258.)  On February 5, 2014, Plaintiff Hart filed an opposition to Defendant

13 Hockett's motion to amend the judgment.  (ECF No. 261.)  On February 12, 2014, Defendant

14 Hockett filed a reply and Plaintiff Hart filed a second motion to amend the judgment.  (ECF No.

15 271, 272.)  On February 18, 2014, Plaintiff Hart's second motion to amend the judgment was

16 granted and Plaintiff Hart filed a renewed motion for attorney fees.  (ECF Nos. 274, 277.)  On

17 February 19, 2014, Defendant TFD filed an opposition to Plaintiff Oyarzo's motion for attorney

18 fees.  (ECF No. 278.)

19       An order issued granting Defendant Hockett and Plaintiff Hart's motions to amend the

20 judgment and a second amended judgment was entered on February 25, 2014.  (ECF Nos. 282,

21 283.)  Judgment was entered in favor of Plaintiff Hart and against Defendant Hockett on Plaintiff

22 Hart's First Amendment claim.  Plaintiff Hart was awarded $1.00 in nominal damages and $1.00

23 in punitive damages with post-judgment interest.  Judgment was entered in favor of Plaintiff Hart

24 and against Defendant TFD on Plaintiff Hart's Firefighter's Procedural Bill of Rights claim.

25 Judgment was entered in favor of Defendants TFD and Powers on all remaining claims.  (ECF

26 No. 283.)

27       On February 26, 2014, Plaintiff Oyarzo filed a reply to Defendant TFD's opposition to

28 his motion for attorney fees.  (ECF No. 286.)  On March 5, 2014, Defendant Hockett filed an

1   opposition to Plaintiff Hart's renewed motion for attorney fees.  (ECF No. 289.)  Plaintiff Hart

2   filed a reply on March 12, 2014.  (ECF No. 294.)  On March 24, 2014, as directed by the Court,

3   Plaintiff Hockett filed a surreply.  (ECF No. 300.)  On March 28, 2014, Plaintiff Hart filed a

4   reply.  (ECF No. 302.)

5                                          **II.**

6                                   **LEGAL STANDARD**

7         Under the "American Rule", each party to a lawsuit ordinarily bears its own attorney fees

8   unless there is express statutory authorization to award attorney fees.  <u>Hensley v. Eckerhart</u>, 461

9   U.S. 424, 429 (1983).  Plaintiff Oyarzo seeks attorney fees pursuant to 29 U.S.C. § 216(b).  (Plf.

10  Oyarzo's Reply to Def. TFD Opp. to Mot. for Attorney Fees 2, ECF No. 286.)  Plaintiff Hart

11  seeks attorney fees pursuant to Title 42 U.S.C. § 1988(b).  (Renewed Motion for Attorneys' Fees

12  1, ECF No. 277.)

13        **A.      29 U.S.C. § 216(b)**

14        Section 216 of the FLSA provides that the court shall "allow a reasonable attorney's fee

15  to be paid by the defendant, and costs of the action."  29 U.S.C. §216 (b).  An award of attorney

16  fees is mandatory under the FLSA, however the amount of the award is within the discretion of

17  the court.  <u>Alyeska Pipeline Service Co. v. Wilderness Society</u>, 421 U.S. 240, 262 n. 34 (1975)

18  <u>superseded by statute on other grounds</u> 42 U.S.C. 1988(b); <u>Houser v. Matson</u>, 447 F.2d 860, 863

19  (9th Cir. 1971).

20        **B.      42 U.S.C. § 1988(b)**

21        Title 42, United States Code, Section 1988(b) provides the court discretion to award

22  reasonable attorney fees to the prevailing party in an action brought under 42 U.S.C. § 1983.

23  "The purpose of § 1988 is to ensure 'effective access to the judicial process' for persons with

24  civil rights grievances."  <u>Mendez v. County of San Bernardino</u>, 540 F.3d 1109, 1124 (9th Cir.

25  2008) (citations omitted).  Ordinarily a prevailing plaintiff should recover attorney fees unless

26  special circumstances would render such an award unjust.  <u>Mendez</u>, 540 F.3d at 1124.

27        Once a civil rights plaintiff obtains a judgment against the defendant, the degree of the

28  success obtained goes to the reasonableness of attorney fees.  <u>Farrar v. Hobby</u>, 506 U.S. 103, 114

(1992).  "Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee."  Hensley, 461 U.S. at 435.  "If, on the other hand, a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount."  Hensley, 461 U.S. at 436. Where a party is awarded only nominal damages because of his failure to prove an essential element of his claim for monetary relief, usually the only reasonable fee is no fee at all.  Mahach-Watkins v. Depree, 593 F.3d 1054, 1059 (9th Cir. 2010).

"Indeed, '[t]he most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained.' "  Farrar, 506 U.S. at 114 (quoting Hensley, 461 U.S. at 436). After considering the amount and nature of the damages awarded, the court may award low or no fees without analyzing the factors bearing on reasonableness or the lodestar.  Farrar, at 115.  The initial inquiry is then whether the prevailing party who receives only nominal damages is entitled to any fees at all.  Benton v. Oregon Student Assistance Com'n, 421 F.3d 901, 905 (9th Cir. 2005).

## C.    Lodestar Approach

The Ninth Circuit utilizes the "lodestar" approach for assessing reasonable attorney fees, where the number of hours reasonably expended is multiplied by a reasonable hourly rate. Gonzalez v. City of Maywood, 729 F.3d 1196, 1202 (9th Cir. 2013); Camacho v. Bridgeport Fin., Inc., 523 F.3d 973, 978 (9th Cir. 2008).  The court then may adjust the lodestar upward or downward based upon a variety of factors.  Gonzalez, 729 F.3d at 1202.

It is the prevailing party's burden to submit billing records to establish that the number of hours requested are reasonable.  Gonzalez, 729 F.3d at 1202.  The court should exclude hours that could not reasonably be billed to a private client, such as hours that are excessive, redundant or unnecessary.  McCown v. City of Fontana, 565 F.3d 1097, 1101 (9th Cir. 2009); Gates v. Deukmejian, 987 F.2d 1392, 1397 (9th Cir. 1992).  The district court may reduce the hours by 1) conducing "an hour by hour analysis of the fee request," and excluding "those hours for which it would be unreasonable to compensate the prevailing party[;]" or 2) "when faced with a massive fee application the district court has the authority to make across-the-board percentage cuts either

1  in the number of hours claimed or in the final lodestar figure as a practical means of [excluding

2  non-compensable hours] from a fee application."  Gonzalez, 729 F.3d at 1203 (quoting  Gates,

3  987 F.2d at 1399).

4          If the "district court decides that a percentage cut (to either the lodestar or the number of

5  hours) is warranted, it must "set forth a concise but clear explanation of its reasons for choosing

6  a given percentage reduction."  Gonzalez, 729 F.3d at 1203 (quoting Gates, 987 F.2d at 1400).

7  There is a recognized exception to this rule where the district court can impose a small reduction,

8  no greater than 10 percent based upon its discretion, without providing a more specific

9  explanation.  Gonzalez, 739 F.3d at 1203.

10         In determining a reasonable fee, the Court takes into account the factors set forth in Kerr

11  v. Screen Extras Guild, Inc., 526 F.2d 67, 69-70 (9th Cir. 1975): (1) the time and labor required,

12  (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal

13  service properly, (4) the preclusion of other employment by the attorney due to acceptance of the

14  case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations

15  imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9)

16  the experience, reputation and ability of the attorneys, (10) the "undesirability" of the case, (11)

17  the nature and length of the professional relationship with the client and (12) awards in similar

18  cases (hereinafter referred to as the "Kerr factors").  McGrath v. County of Nevada, 67 F.3d 248,

19  252 (9th Cir. 1995).

20                                            **III.**

21                                      **DISCUSSION**

22  **A.      Plaintiff Oyarzo's Motion for Attorney Fees**

23         Plaintiff Oyarzo seeks attorney fees in the amount of $190,014.67 against Defendant

24  TFD. (ECF No. 286 at 2.)  Defendant TFD opposes the motion for attorney fees on the ground

25  that it includes numerous tasks that are unrelated to Plaintiff Oyarzo's FLSA claim.  (Def. TFD's

26  Opp. to Pl. Oyarzo's Mot. for Attorney Fees 6, ECF No. 278.)  Further, Defendant contends that

27  the fee request should be reduced: 1) to mirror the marginal success of Plaintiff Oyarzo in this

28  action; 2) due to the over-litigation of the case.  (Id.)

                                                6

A plaintiff is not entitled to receive attorney's fees for time spent on unsuccessful claims that are unrelated to a plaintiff's successful [] claim." These unrelated claims are to be treated as if they were raised in a separate lawsuit to realize "congressional intent to limit awards to prevailing parties." McCown, 565 F.3d at 1103.   (quoting Hensley, 461 U.S. at 435).  Where a plaintiff has had limited success on the claims brought in the action, the Ninth Circuit has instructed courts to follow a two-step analysis:

> First, the court asks whether the claims upon which the plaintiff failed to prevail were related to the plaintiff's successful claims. If unrelated, the final fee award may not include time expended on the unsuccessful claims. If the unsuccessful and successful claims are related, then the court must apply the second part of the analysis, in which the court evaluates the "significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." If the plaintiff obtained "excellent results," full compensation may be appropriate, but if only "partial or limited success" was obtained, full compensation may be excessive. Such decisions are within the district court's discretion.

Schwarz v. Secretary of Health  Human Services, 73 F.3d 895, 901-902 (9th Cir. 1995) (citations omitted).

   1.   Reasonable Hourly Rate

Plaintiff Oyarzo is seeking a blended rate of $295.00 per hour for substantive work and $200.00 per hour for travel time.  (Mot. for Attorney Fees 9, ECF No. 253.)  The loadstar amount is to be determined based upon the prevailing market rate in the relevant community.  Blum v. Stenson, 465 U.S. 886, 896 (1984).  It is the moving party's burden to establish that requested rates are in line with those prevailing in the community for similar services by attorneys of reasonably comparable skill, experience, and reputation.   Jadwin v. County of Kern, 767 F.Supp.2d 1069, 1124 (E.D. Cal. 2011).

While Defendants submit a case from the Superior Court of the County of Los Angeles in which they were awarded a blended rate of $325.00 per hour, the "relevant legal community" for the purposes of the lodestar calculation is generally the forum in which the district court sits. Gonzalez, 729 F.3d at 1205.  Additionally, Plaintiff submits a United States Consumer Law Attorney Fee Survey Report for 2010-2011 which shows the average attorney hourly rates for attorneys practicing in California.  (ECF No. 253-7.)  This document does not address the

1   "relevant legal community" here, which is the market within the Fresno Division of the Eastern

2   District of California.  The court may rely on its own knowledge of customary legal local rates

3   and experience with the legal market in setting a reasonable hourly rate.  Ingram v. Oroudjian,

4   647 F.3d 925, 926 (9th Cir. 2011).

5        Ms. Siebert received her Juris Doctorate from the University of Southern California and

6   has been a member of the California State Bar since December 6, 2005.  (Decl. of Shannon

7   Siebert ¶¶ 2, 3, ECF No. 253-1.)  Ms. Siebert has litigated approximately 70 civil cases,

8   including 40 employment matters in state and federal court, and has participated at trial in four

9   employment actions.  (Id. at ¶ 4.)

10       Mr. Bautista received his Juris Doctorate from the University of Southern California and

11  has been a member of the California State Bar since May 19, 2008.  (Decl. of Joe Bautista ¶¶ 2,

12  3, ECF No. 253-2.)  Mr. Bautista has litigated approximately 80 civil cases, including

13  approximately 25 employment matters, in state and federal court, and has participated at trial in

14  three employment actions.  (Id. at ¶ 4.)

15       Defendant argues that at side bar, counsel admitted that this was Mr. Bautista's first trial

16  in federal court and Ms. Seibert's second trial and first as lead counsel in federal court.

17  Defendant contends that counsels' limited experience was evident at trial in the manner in which

18  this case was presented.  The Court agrees that the rate requested by Plaintiff's counsel is not

19  reasonable based upon counsel's experience and performance during the trial of this action.

20       Courts in the Eastern District of California, Fresno Division, have found that the

21  reasonable hourly rates for competent attorneys with less than ten years of experience are $250

22  to $300 per hour.  White v. Rite of Passage Adolescent Treatment Centers and Schools, No.

23  1:13-cv-01871-LJO-BAM, 2014 WL 641083, at *5 (E.D. Cal. Feb. 18, 2014) (awarding $300.00

24  per hour for counsel with six years of experience in representation action under the California

25  Private Attorney General Act of 2004); see Jones v. Lehigh Southwest Cement Co., Inc., No.

26  1:12-cv-00633-AWI, 2014 WL 346619, at *6 n.3 (E.D. Cal. Jan. 30, 2014) (awarding $280.00

27  and $215.00 per hour in employment action); Williams v. Ruan Transport Corp., No. 13-cv-

28  01157-LJO, 2013 WL 6623254, at *6 (E.D. Cal. Dec. 16, 2013) (this Court awarded $375.00 per

1    hour to attorney with over thirty years of experience and $325.00 per hour to attorney with

2    fifteen years of experience in employment action); Ramirez v. Merced County, No. 1:11-cv-

3    00531-AWI-DLB, 2013 WL 4780440, at *9 (E.D. Cal. Sept. 5, 2013) (awarding $350.00 per

4    hour to attorney with more than 30 years of experience and $250.00 for attorney with 14 years of

5    experience); Jadwin v. County of Kern, 767 F.Supp.2d 1069, 1134 (E.D. Cal. 2011) (awarding

6    hourly rates of $350.00 for attorney with 14 years of experience, $275.00 for attorney with 11

7    years of experience, and $295.00 for contract attorney with 18 years of experience in

8    employment action).

9         Given their skill and experience, as well as the observation of the Court during the

10   pendency of this action and at trial, the Court finds that $250.00 per hour is a reasonable hourly

11   rate for the services of both Ms. Seibert and Mr. Bautista in this action.  Accordingly, the hourly

12   rate shall be set at $250.00 per hour for all services reasonably expended in this action and

13   $200.00 per hour for time spent in travel.

14        2.    Hours Reasonably Expended

15        Plaintiff Oyarzo is seeking 750.2 hours in substantive time and 27.2 hours for time spent

16   in travel.  (ECF No. 253 at 7; ECF No. 286 at 10.)  Defendant TFD contends that Plaintiff

17   Oyarzo is seeking fees for time spent on his unsuccessful claims and the fee should be reduced

18   considering the limited success in this action.  (ECF No. 9-19.)  However, while Defendants list

19   multiple instances in which they claim hours are excessive they declined to give a "line by line

20   analysis of plaintiff's voluminous billing records" as it "would drown the reader in unnecessary

21   details."  (ECF No. 278 at 20-21.)  The Ninth Circuit has advised the district court to "defer to

22   the winning lawyer's professional judgment as to how much time he was required to spend on the

23   case," Moreno v. City of Sacramento, 534 F.3d 1106, 1112 (9th Cir. 2008), and without such line

24   by line analysis by Defendant the Court declines to insert its judgment for that of counsel that

25   prosecuted this action.

26        Nevertheless, the Court agrees that Plaintiff Oyarzo is requesting an unreasonable

27   number of hours in this action.  While Plaintiff Oyarzo declares that the hours requested are only

28   those reasonably related to prosecuting his FLSA claim, this same statement has been made

1   multiple times by counsel in this action and then counsel has "revised" those expenses and costs

2   sought downward.  (ECF Nos. 234, 241, 249, 252, 277, 279, 285.)  Even in the reply to this

3   motion, counsel stated that the initial request was being revised by a .3 deduction to account for

4   time spent on an unrelated matter.

5        Specific examples of the excessiveness of the hours are raised by Defendant.   For

6   example, Plaintiff records 1.4 hours for preparation and 2.4 hours for attending the deposition of

7   Beth De Lima on February 1, 2013.  On March 1, 2013, counsel records 2.5 hours to review Ms.

8   De Lima's deposition transcript.  As Defendant argues, it seems excessive for counsel to spend

9   the same amount or more time to review the deposition transcript of a deposition that she

10  attended one month earlier.

11       Review of the deposition transcript of Nicholas Ohler provided by Defendant also

12  documents that the amount of time spent in this deposition was excessive.   Mr. Ohler's

13  deposition records documents four pages of questioning about yard care equipment which are not

14  relevant to the safety violations that were alleged in this action.  (Depo. Trans. 153:17-157:15.)

15  Further, the record does demonstrate that questioning went on for long periods of time about

16  other issues of questionable relevance to this action.  The Court noted similar issues during the

17  trial of this matter.  Based upon the finding that the hours sought are excessive, the Court shall

18  exercise its discretion to apply a ten percent "haircut" to the hours claimed by counsel.

19  Gonzalez, 739 F.3d at 1203.

20       Plaintiff cannot receive fees for hours expended on his unrelated claims on which he was

21  unsuccessful in this litigation.  Schwarz, 73 F.3d at 901-902.  In this instance, Plaintiff Oyarzo

22  received a judgment in his favor on his claim for unpaid wages in violation of the FLSA.  As

23  Plaintiff Oyarzo has previously argued in his motion to sever and Defendant briefs in the

24  opposition to the motion for attorney fees, the FLSA claim is unrelated to the remaining claims

25  on which Plaintiff Oyarzo did not prevail.  The FLSA claim is not based upon a common core of

26  facts with the remaining claims brought in this action.  Nor do the FLSA claim and other claims

27  have related legal theories.  Since the claims brought here are entirely separate and distinct,

28  Plaintiff Oyarzo cannot recover that portion of fees which were incurred in prosecuting his

1    unrelated claims.  Webb v. Sloan, 330 F.3d 1158, 1168 (9th Cir. 2003).

2         The Court declines to use the hours requested by Plaintiff Oyarzo in determining a

3    reasonable attorney fee and shall use the total number of hours expended in this action.  The

4    attorney fee award shall be based upon the percentage of the hours expended that would be

5    related to Plaintiff Oyarzo's FLSA claim.  Based upon the motions brought while the action was

6    pending and the Court's knowledge of this action, it is clear that the bulk of the litigation

7    involved the claims that are unrelated to the FLSA claims.  By this motion, Plaintiff Oyarzo is

8    seeking approximately 740 hours of the 2,500 that were spent in this action.  (ECF No. 253 at 6.)

9    Counsel states that in determining the hours sought they are seeking approximately 16.6 percent

10   of the total time spent on a given task that is related to both Plaintiffs Hart and Oyarzo's claims.

11   (Id. at 7.)

12        In evaluating the percentage of time to be allocated to the FLSA claim, the Court

13   considers the claims that were proceeding in this action.  Plaintiff Oyarzo and Hart brought

14   thirteen claims against six defendants.[2]  Generally, for the purpose of division of time, this can

15   be separated into three separate claims: 1) FLSA claim brought by Plaintiffs Oyarzo and Hart

16   against Defendant TFD; 2) retaliation and due process claims from April 2010 through August

17   2010; and 3) retaliation and due process claims from August 2010 through December 2010 after

18   Defendant Hockett was seated on TFD's Board of Directors.  There were forty-two depositions

19   taken in this action, of which Plaintiff Oyarzo seeks costs for seventeen.  (Pl. Hart's Mot. to

20

21   [2] The amended complaint in this action was brought by 1) Plaintiffs Oyarzo and Hart against Defendant TFD for
     violation of the Fair Labor Standards Act; 2) Plaintiffs Oyarzo and Hart against Defendants TFD, Turner, Hockett,
22   Machado, Hutchins, and Powers for unlawful deterrence in violation of the First Amendment; 3) Plaintiff Oyarzo
     against Defendants TFD, Turner, Hockett, Machado, Hutchins, and Powers for retaliation in violation of the First
23   Amendment; 4) Plaintiff Hart against Defendants TFD, Turner, Hockett, Machado, Hutchins, and Powers for
     retaliation in violation of the First Amendment; 5) Plaintiffs Oyarzo and Hart for denial of due process in violation
24   of the Fourteenth Amendment; 6) Plaintiffs Oyarzo and Hart against Defendant TFD for violation of their civil
     rights; 7) Plaintiffs Oyarzo and Hart against Defendant TFD for retaliation for reporting safety violations in
25   violation of California Labor Code section 6310; 8) Plaintiffs Oyarzo and Hart against Defendant TFD for
     retaliation for disclosing statutory violations in violation of California Labor Code section 1102.5; 9) Plaintiffs
26   Oyarzo and Hart against Defendant TFD for violations of the FPBR; 10) Plaintiff Oyarzo against Defendant TFD for
     age discrimination in violation of California Government Code section 12940, et seq.; 11) Plaintiff Oyarzo against
27   Defendant TFD for marital status discrimination; 12) Plaintiff Hart against Defendant TFD for retaliation due to his
     association with Plaintiff Oyarzo in violation of Government Code section 12940, et seq.; and 13) Plaintiff Oyarzo
28   against Defendants Turner and Hutchins for harassment and Plaintiff Hart against Defendants Hockett and Powers
     for harassment in violation of California Government Code section 12940, et seq.  (ECF No. 25.)

1   Review Clerk's Taxation of Costs 7, ECF No. 249; Pl. Oyarzo's Mot. to Review Clerk's
2   Taxation of Costs 7, ECF No. 251.)   Further, for the seventeen depositions which Plaintiff
3   Oyarzo seeks costs, the majority of the time spent in the deposition would relate to the retaliation
4   claims.

5       For example, Plaintiff Oyarzo sought costs for the September 25, 2012 deposition of Ms.
6   Russell-Bautista.  Ms. Bautista was specifically designated to address the financial condition at
7   Defendant TFD, which was only relevant to the retaliation claims.  (Depo. of Deborah Russell-
8   Bautista 21-86, ECF No. 289-1.)  Other than several questions regarding payroll, Ms. Bautista's
9   entire deposition on September 25, 2012 was related solely to the retaliation claims that were
10  proceeding in this action.  (ECF No. 289-1 at75-81.)

11      Based upon the Court's familiarity with the case and the review of the documents
12  submitted to support the Plaintiffs' request for costs, the Court determines that the representation
13  on the FLSA claims brought by Plaintiff Oyarzo and Hart would be 30 percent of the total time
14  spent in this action.  Accordingly, the Court determines that a 70 percent reduction in the total
15  hours is appropriate to account for the unsuccessful claims and shall award 30 percent of the total
16  hours expended, less the 10 percent reduction discussed above, for the FLSA claims.

17      The Court has also considered the litigation following the order granting summary
18  judgment.  After the order granting summary judgment, the remaining claims were: 1) Plaintiff
19  Oyarzo's claim against Defendant TFD for violation of the FLSA; 2) Plaintiff Hart's retaliation
20  claim against Defendant Powers; 3) Plaintiff Hart's retaliation claim against Defendant Hockett;
21  and 4) Plaintiff Hart's claims against Defendant TFD for violation of the FPBR and California
22  Labor Code sections 6310.

23      Plaintiff states that during this time period the hours worked were apportioned equally
24  between Plaintiffs to this action.  However, specifically during this time period a vast majority of
25  the action involved the retaliation and state law claims that were still active against Defendants
26  Hockett and Powers.  Dividing this time equally between Plaintiffs to this action would result in
27  an excessive fee to counsel.

28      For example, Plaintiff has divided all time in trial preparation and at trial equally between

12

the plaintiffs.   However, there was a single FLSA claim against Defendant TFD and two retaliation claims and two state statutory claims remaining in this action for which Plaintiff Oyarzo cannot recover.   The Court has reviewed the records of the testimony presented at trial and over two thirds of the trial testimony was devoted to Plaintiff Hart's claims.   While Plaintiff Oyarzo divided the time for trial between the two Plaintiffs that would clearly result in an excessive award on his behalf.   Based upon the Court's involvement after summary judgment, the above referenced percentages are also reasonable percentages for the time spent after the resolution of the summary judgment motion.   Therefore, the total hours for prosecuting the FLSA claims would be 742.37[3] hours for litigation activities and 21.76[4] hours for travel time.

As the time expended in prosecuting Plaintiff Oyarzo's FLSA claim would be also incurred in prosecuting Plaintiff Hart's FLSA claim, this time shall be reduced by fifty percent to apportion between Plaintiff Oyarzo and Plaintiff Hart, who is not entitled by this motion to fees for his FLSA claim.   Cf. In re Paoli, 221 F.3d 449, 469 (3d Cir. 2000) (The district court may apportion costs between the winning and losing parties, including apportioning costs between multiple plaintiffs or defendants on the same side.).   Further, Plaintiff Hart's settlement included fees and costs and the amount must be reduced to avoid duplicate recovery in this action.   The Court will award Plaintiff Oyarzo 371.19 hours for litigation time and 10.88 hours for travel.

Based on the foregoing, Plaintiff Oyarzo is awarded attorney fees of $92,797.50[5] for litigation and $2,176.00[6] for travel.   The total attorney fee award for Plaintiff Oyarzo is $94,973.50.

    3.    Adjustment to Lodestar

There is a strong presumption that the lodestar is a reasonable fee, Jordan v. Multnomah

---

[3] Total time spent in this action was 2,823.80 (ECF No. 286 at 4), plus 6.3 (id. at 10) for a total of 2,830.1 hours. Less the ten percent "haircut," the total hours considered to be reasonable for the entire litigation are 2,547.09. Deducting the hours for travel (reduced by ten percent), the total litigation time in this action is 2,474.55 hours. Thirty percent of the hours expended is 742.37 hours.

[4] This figure is 30 percent of the total travel time of 72.54 hours (80.6 less 10 percent).  (ECF No. 253-4 at 85-86.)

[5] 371.19 x $250.00 = $92,797.50.

[6] 10.88 x $200.00 = $2,176.00.

1  County, 815 F.2d 1258, 1262 (9th Cir. 1987), "thus a multiplier may be used to adjust the

2  lodestar amount upward or downward only in rare and exceptional cases, supported by both

3  specific evidence on the record and detailed findings . . . that the lodestar amount is unreasonably

4  low or unreasonably high[,]" Van Gerwen v. Guarantee Mut. Life Co., 214 F.3d 1041, 1045 (9th

5  Cir. 2000) (internal punctuation and citations omitted).

6       This action began in December 2010 and counsel spent three years conducting this

7  litigation.  (ECF No. 253-1 at ¶ 6.)  Given the number of claims that Plaintiffs Oyarzo and Hart

8  brought against the six defendants in this action, the length of time from inception to trial is not

9  unusual and weighs against an adjustment to the lodestar.

10      Plaintiff Oyarzo did not prevail on the vast majority of the claims that were involved in

11 this litigation.  While counsel contends that the time spent litigating this action required them to

12 turn down other cases, the vast majority of the time spent was the result litigating claims upon

13 which Plaintiff Oyarzo did not prevail or were spent on behalf of Plaintiff Hart.  Further, the

14 Court finds merit in Defendant TFD's argument that some of the hours spent in this action were

15 a result of counsel over-litigating the claims.  At trial, Plaintiff Oyarzo was seeking a total of

16 $68,000.00 in damages for his FLSA claim.  If he had recovered the entire amount sought, plus

17 liquidated damages his total award would be less than $140,000.00.  Yet, he is seeking attorney

18 fees and costs of over $205,000.00.  No reasonable Plaintiff would spend over $205,000.00 on

19 the chance that he could recover $140,000.00.

20      While there was an issue that Plaintiff Oyarzo was the fire chief at the time that his FLSA

21 action accrued, he was still an hourly employee.  Defendants attempted to argue an unrecognized

22 exception to the FLSA due to Plaintiff Oyarzo's position, however, as Plaintiff argued in the

23 motions in limine, there was no basis in law for this argument.  This action was still a fairly

24 straight forward claim that Plaintiff Oyarzo was not paid for all the hours he worked, and

25 Defendant's attempt to argue a "novel" exception to the FLSA was not raised until summary

26 judgment.  This did not significantly increase the amount of overall time, novelty, or difficulty in

27 litigating this action.

28      Further, considering fee awards in other FLSA actions for unpaid wages, the Court finds

1  the award to Plaintiff Oyarzo to be well within the reasonable range.  Pehle v. Dufour, No. 2:06-

2  cv-01889-EFB, 2014 WL 546115, at *7-8 (E.D. Cal. Feb. 11, 2014) (awarding 394.85 hours

3  following bench trial for total award of $93,131.25 in attorney fees); Lazaro v. Lomarey, Inc.,

4  No. 5:09-cv-02013, 2012 WL 2428272, at *3 (N.D. Cal. June 26, 2012) (awarding 118.55 hours

5  with a 40 percent "success" reduction following bench trial for total fee award of $20,393.10);

6  Krouse v. Ply Gem Pacific Windows Corp., No. 3:10-cv-00111-HA, 2012 WL 3241678, at *4

7  (D. Or. Aug. 7, 2012) (awarding $35,000.00 in attorney fees following jury trial); Ulin v. ALEA-

8  72 Inc., 2011 WL 4974282, at *4 (N.D. Cal. Oct. 19, 2011) (awarding $81,526.77 in attorney

9  fees following bench trial); Traxler v. Multnomah County, 2008 WL 2704490, at *3 (D. Or. July

10  7, 2008) (awarding fees of $113,236.88 in Family Medical Leave Act case following trial).

11        Considering the Kerr factors, the Court finds that the fees awarded in this instance

12  compensate counsel for the time reasonably incurred in the litigation and declines to apply a

13  multiplier.

14        **B.**      **Plaintiff Hart's Motion for Attorney Fees**

15        Plaintiff Hart moves for attorney fees in the amount of $356,779.50 for prevailing on his

16  First Amendment claim against Defendant Hockett.  (Renewed Motion for Attorneys' Fees 1,

17  ECF No. 277.)  Defendant Hockett objects on the ground that the award of nominal damages is

18  insufficient to support the award of attorney fees, and in the alternative, should the Court find

19  that attorney fees are appropriate, Plaintiff Hart's request is excessive.  (Def. Kenneth Hockett's

20  Opp. to Pl. Hart's Renewed Mot. for Attorneys' Fees 6, ECF No. 289.)  Plaintiff Hart counters

21  that he did receive other tangible results in that two letters were removed from his personnel file.

22  (Pl. Nicholas Hart's Reply 4-5.)  Defendant responds that Plaintiff did not seek such relief in

23  bringing this action and the removal of the documents was a voluntary act on the part of TFD

24  and therefore, the removal of the letters is not other tangible relief achieved.  (Def. Kenneth

25  Hockett's Surreply 3-9, ECF No. 300).

26        The parties do not dispute that Plaintiff Hart is the prevailing party on his First

27  Amendment claim against Defendant Hockett as he was awarded nominal damages.  The fact

28  that a plaintiff only receives nominal damages does not affect whether he is a prevailing party,

1    but does bear on the propriety of the award of attorney fees.  Farrar, 506 U.S. at 114.  The issue

2    before the Court is whether Plaintiff Hart is entitled to an award of attorney fees based upon the

3    nominal and punitive damages awards, and if so, in what amount.

4            1.    Whether Plaintiff Hart is Entitled to Attorney Fees

5            In Farrar, the Supreme Court stated that "[i]n some circumstances, even a plaintiff who

6    formally 'prevails' under § 1988 should receive no attorney's fees at all.  A plaintiff who seeks

7    compensatory damages but receives no more than nominal damages is often such a prevailing

8    party." Id. at 115.  "Where recovery of private damages is the purpose of ... civil rights

9    litigation, a district court, in fixing fees, is obligated to give primary consideration to the amount

10   of damages awarded as compared to the amount sought." Farrar, 506 U.S. at 114 (quoting

11   Riverside v. Rivera, 477 U.S. 561, 585 (1986) (Powell, J., concurring in judgment)).  The court

12   must consider the relationship between the extent of success and the amount of the fee award.

13   Cummings v. Connell, 402 F.3d 936, 947 (9th Cir. 2005).

14           To award attorney fees in an action where only nominal damages are awarded, the

15   prevailing party must show "that the lawsuit achieved other tangible results." Guy v. City of San

16   Diego, 608 F.3d 582, 589 (9th Cir. 2010).  Since nominal damages alone are not enough to

17   justify an award of attorney fees, the court should consider other ways in which the prevailing

18   party succeeded. Guy, 608 F.3d at 905.  The three factors a district court should consider to

19   determine whether a plaintiff succeeded beyond the judgment for nominal damages are:  1) "

20   '[t]he difference between the amount recovered and the damages sought,' which in most nominal

21   damages cases will disfavor an award of fees[;]" 2) "the significance of the legal issue on which

22   the plaintiff claims to have prevailed[;]" and 3) "whether the plaintiff 'accomplished some public

23   goal.' " Malach-Watkins, 593 F.3d at 1059 (quoting Farrar, 506 U.S. at 121 (O'Connor, J.,

24   concurring)).

25           Action taken prior to the finding of liability and entry of judgment are not considered to

26   be a "tangible result" of the litigation which will support an award of attorney fees. Benton, 421

27   F.3d at 908-909.

28

1          **a.      Difference between the amount recovered and damages sought**

2          Initially, the Court considers the difference between the amount of damages sought and

3 those recovered.   In the amended complaint, Plaintiff Hart did not specify the amount of

4 damages that he was seeking but sought "compensatory and other economic damages, including

5 but not limited to lost wages and benefits, and damages for emotional pain and mental anguish,

6 in amounts according to proof;" and "punitive and exemplary damages from the individually

7 named Defendants only, to be determined at the time of trial[.]"   (Am. Compl. 23, ECF No. 25.)

8          When Plaintiff Hart brought his complaint it was not clear that he would only be entitled

9 to post termination economic damages on the claim that proceeded to trial against Defendant

10 Hockett.   Plaintiff Hart's amended complaint brought multiple claims against Defendant Hockett

11 for constitutional and statutory violations, as well as the claims against the other five defendants.

12          At trial, as discussed in the order on the motion to amend the judgment, Plaintiff Hart

13 attempted to persuade the jury that he was entitled to damages of over $600,000.00.   (Order re

14 Cross Mot. to Am. Judgment, 5, 7-11; ECF No. 282; Transcript of Pl.s' Closing Argument 52:9-

15 14, ECF No. 265.)   The jury awarded compensatory damages which were not allowed by law

16 and an amended judgment was entered reflecting Plaintiff Hart's failure to prove the element of

17 his damages.   An amended judgment issued, and Plaintiff was awarded nominal damages of

18 $1.00 and punitive damages of $1.00.   (ECF Nos. 265, 266.)

19          Plaintiff was seeking over $600,000.00 in damages and only received $2.00.   In this

20 instance, this factor, which is the most important, weighs heavily in favor of classifying Plaintiff

21 Hart's victory as de minimis and against an award of attorney fees.

22          **b.      Other tangible benefit**

23          Plaintiff Hart argues that he is entitled to an award of attorney fees because he did receive

24 another tangible result, having two disciplinary letters removed from his personnel file.

25 Defendant replies that the removal of the disciplinary letters were not a result achieved through

26 litigation, but this was a voluntary act on the part of Defendant TFD, so it does not constitute

27 other tangible results for the purpose of awarding attorney fees.

28          The Court agrees with Defendant Hockett that the removal of the two disciplinary letters

1   is not significant relief obtained through this litigation.   During the pendency of this action,

2   Plaintiff Hart never requested injunctive relief against Defendant Hockett and never requested

3   the removal of the disciplinary letters until post-trial motions.   At that time, the parties were

4   litigating whether Plaintiff Hart was entitled to injunctive relief under the FPBR.   Plaintiff Hart

5   requested injunctive relief for the violation of the FPBR in having the disciplinary letters

6   removed from his personnel file.   At the end of the hearing, in response to the Court's inquiry as

7   to whether there was anything else to be addressed, Plaintiff's counsel brought up the issue of

8   injunctive relief under the First Amendment:

9       MR. BAUTISTA: I did. And actually Your Honor brought it up, and it
        was one thing that I did think, unfortunately upon leaving the court on -- I forget
10      which day it was.  But with regards to the write-ups and with regards to Mr.
        Hart's claims, and under the First Amendment, two of the things that were found
11      were that punitive action was taken against him -- well I don't remember the exact
        language – but I'm not sure if it's necessarily appropriate, but we would also
12      request that the write-ups be removed from Mr. Hart's file pursuant to the finding
        under the First Amendment.
13
        That would be a request that we would additionally have. I'm sure that
14      Mr. Abbott would have a differing opinion on that.

15      MR. ABBOTT: Well, Your Honor, what I question is whether this is the
        subject for injunctive relief.  I think that if at the beginning of this trial they had
16      asked me, will you pull these documents from his personnel file at the end of this
        case come what may, the answer would have been yes.  Now I can't say that
17      today because their request's never been put to me.  But I think that could be
        mooted immediately.
18
        THE COURT: By me saying it's moot?
19
        MR. ABBOTT: No.   By simply -- by the district, you know, saying
20      they're gone.

21      MR. BAUTISTA: That's fine. If -- that's all we – I would like them
        removed from my client's file.  I haven't had an opportunity –
22
        THE COURT: Well why don't you talk to Mr. Abbott and see if you can
23      work it out and –

24      MR. ABBOTT: Because the subtext that I hear here is that they're trying
        to get additional relief as a basis for an attorney's fee award.  That's what I think
25      this is all about.  And I don't think there's any issue as to whether -- I could tell
        you this -- I mean if this case hadn't been around – I mean suppose we move the
26      originals from his file and we throw them away, we're spoliating evidence at that
        point.
27
        I just -- I don't think that this has ever been a demand that's been made to
28      us throughout the course of the litigation and I think it's a make weight issue.  It's

18

1    one that's never been fairly presented.

2              MR. BAUTISTA: If I might respond to that, Your Honor?

3              THE COURT: Briefly.

4              MR. BAUTISTA: I'm -- this is not a make weight issue for me.  I'm not
     trying to pile on with regards to different relief.  I just want it removed from my
5    client's file.  And if defendants are willing to do that and tell me that now, then
     I'll withdraw any request for it under the -- the request I just made for injunctive
6    relief to have them removed.

7              If defendants will stipulate to that, then I'd completely remove that request
     as it pertains to the First Amendment, absolutely.  I just would like it removed.
8
     (Transcript of Motion Hearing re: Liquidated Damages 62:22-65:22, ECF No. 299.)
9
            In this instance, Plaintiff's complaint did not seek such relief and further, to the extent
10
     that the relief was requested, defense counsel offered to have the letters voluntarily removed
11
     from Plaintiff Hart's personnel file, and Plaintiff Hart's counsel agreed to withdraw any request
12
     for relief under the First Amendment.
13
            Further, fees are appropriate if 'the lawsuit achieved other tangible results—such as
14
     sparking a change in policy or establishing a finding of fact with potential collateral estoppel
15
     effects.' "  Guy, 608 F.3d at 589 (tangible benefit to society by encouraging the city to ensure
16
     that all police officers are well trained to avoid the use of excessive force); Wilcox v. City of
17
     Reno, 42 F.3d 550, 556-57 (9th Cir. 1994) (tangible benefit to public by exposing
18
     unconstitutional use of force policy); Rutherford v. McKissack, No. C09-1693 MJP, 2011 WL
19
     3421516, at *4 (W.D. Wash. Aug. 4, 2011) (tangible benefit as encourages City to train officers
20
     in how to conduct themselves as off-duty officers and limits of investigatory stops); Walls v.
21
     Central Contra Costs Transit Authority, No. CV-08-224 PJH (JSC), 2012 WL 2711252,at *4
22
     (N.D. Cal. Apr. 30, 2012) ("court's holding establishes a finding of fact with potential collateral
23
     estoppel effects as to other employees with similar agreements"); cf. Benton, 421 F.3d at 907-
24
     908 (no tangible benefit where defendant voluntarily changed conduct under revised statute);
25
     Sun v. City & Honolulu, No. 00-00397 BMK, 2006 WL 278859, at *6 (D. Haw. Jan. 18, 2006)
26
     (denying attorney fees where no material change in the workplace); Flores v. Shephard, No.
27
     3:04-cv-02337, 2009 WL 1690946, at *5 (S.D. Cal. Jan. 21, 2009) (denying attorney fees where
28

1  no determination any policy was unconstitutional, no change in a policy, and no benefit to the
2  public at large); <u>Klein v. City of Laguna Beach</u>, __ F.Supp.2d __, 2013 WL 6144770, at *5 (C.D.
3  Cal. Nov. 19, 2013) (voluntary amendment to offending provisions of code before judgment
4  mitigates the importance of the legal issues resolved).

5       Other tangible benefits include something beyond the moral victory that is achieved by
6  the award of nominal damages.  Here, Plaintiff was no longer employed by Defendant TFD and
7  he received no tangible benefit from the removal of the letters from his file.  Similar to the award
8  of award of nominal damages, the removal of the letters from Plaintiff's personnel file did not
9  confer anything more than the moral satisfaction of having them removed.  The Court finds that
10 having two letters removed from Plaintiff's personnel file does not rise to the level of "other
11 tangible results" sufficient to overcome the award of only nominal damages in this case.

12          **C.     Significance of the legal issue**

13      The Court next considers the significance of the legal issue on which the plaintiff has
14 prevailed.  This and the public purpose factors address "the difference between cases where the
15 jury finds the violation of some established right by a state actor, versus those cases that advance
16 our understanding of applicable constitutional law or expose an unconstitutional policy."
17 <u>AmeriTitle, Inc. v. Gilliam County</u>, 912 F.Supp.2d 968, 970 (D. Or. 2012).  This factor considers
18 the general legal importance on which the plaintiff prevailed and the extent that the plaintiff
19 succeeded on his theory of liability.  <u>Mahach-Watkins</u>, 593 F.3d at 1061.  This is the least
20 weighty of the factors the court considers in classifying the victory.  <u>Cartwright v. Stamper</u>, 7
21 F.3d 106, 110 (7th Cir. 1993).

22      The Court may assess the legal issue by comparing it to other cases which have found a
23 significant legal issue in awarding attorney fees.  <u>Mahach-Watkins</u>, 593 F.3d at 1061-622 (right
24 to be free from use of deadly force by law enforcement officer).  The legal issues involved here
25 do not rise to the level found to be significant in other cases.  <u>See</u> <u>Morales v. City of San Rafael</u>,
26 96 F.3d 359, 364-65 (9th Cir. 1996) (right to be free from arrest without a warrant or probable
27 cause); <u>Mercer v Duke University</u>, 401 F.3d 199, 207 (4th Cir. 2005) (right of women to be free
28 from discrimination for participating in school sponsored contact sports); <u>Piper v. Oliver</u>, 69 F.3d

1   875, 877 (8th Cir. 1995) (right to be free from illegal detention); <u>Jones v. Lockhart</u>, 29 F.3d 422,

2   423 (8th Cir. 1994 (right of prisoner to be free from cruel and unusual punishment); <u>Rauda v.</u>

3   <u>City of Los Angeles</u>, 2010 WL 5375958, at *4 (C.D. Cal. Dec. 20, 2010) (right to be free from

4   disclosure of information by law enforcement causing death); <u>Hunter v. County of Sacramento</u>,

5   2013 WL 5597134, at *5 (E.D. Cal. Oct. 11, 2013) (right to be free from use of excessive force);

6   <u>AmeriTitle, Inc.</u>, 912 F.Supp.2d at 971 (unconstitutional county policy involving government

7   intervention in large economic development projects); <u>compare</u> cases found not legally

8   significant <u>Gray ex rel. Alexander v. Bostic</u>, 720 F.3d 887, 896 (11th Cir. 2013) (right for child

9   to be free from unreasonable seizure by law enforcement officer as punishment where right is

10  clearly established); <u>Benton</u>, 421 F.3d at 906-908 (adverse employment action due to defendant's

11  personal bias against educational institution); <u>Flores v. Shephard</u>, 2009 WL 160946, at *5 (S.D.

12  Cal. Jan. 21, 2009) (right to be free from being unreasonably detained where no benefit to

13  public).

14      The issue decided in trial in this instance, whether Defendant Hockett retaliated against

15  Plaintiff Hart in the workplace by placing disciplinary letters in his personnel file or making him

16  work shifts by himself, does not advance our understanding of applicable constitutional law.

17  This factor weighs against an award of attorney fees.

18      **d.    Public purpose**

19      The third factor considers the public purpose served by the victory and "principally

20  relates to whether the victory vindicates important rights and deters future violations." <u>Farrar</u>,

21  506 U.S. at (578-79); <u>Cartwright</u>, 7 F.3d at 110.  Plaintiff Hart brought this action alleging a

22  practice of retaliation by employees and Board Members of Defendant TFD.  Most of the claims

23  were resolved on summary judgment in favor of the various defendants.  At trial, the jury only

24  found that Defendant Hockett retaliated against Plaintiff for his support of Plaintiff Oyarzo, and

25  found against Plaintiff Hart on his claims of retaliation against Defendant Powers and the state

26  law retaliation claims against Defendant TFD.  While the Court acknowledges the importance of

27  an employee's right to be free from retaliation for exercising his First Amendment rights, in an

28  unpublished case the Ninth Circuit reversed the award of attorney fees in a similar retaliation

1   claim.  Lesperance v. City of Spokane, 8 Fed. Appx 745, 748 (9th Cir. 2001).

2       In Lesperance, a police officer brought claims against his employer and the only claims

3   which survived summary judgment were plaintiff's claims for retaliation and constructive

4   discharge.  Id. at *746.  Following trial, the plaintiff was awarded $605.57 in nominal damages

5   and the court awarded $84,000.00 in attorney fees.  Id.  In awarding the attorney fees, the trial

6   court focused on the non-monetary aspects of the jury verdict, and found that "society gains as a

7   whole when violations of civil rights are addressed."  Id. at *747.  To further support the award

8   of attorney fees, the district court addressed the right of employees to be free discrimination and

9   to complain about acts of perceived discrimination without retaliation by their employer.  Id.

10      The appellate court reversed the award of attorney fees stating that general policy

11  considerations "do not reflect the kind of success required to support an award of attorney fees.

12  Lesperance sought only monetary damages and recovered nothing more than nominal damages.

13  This is not a case in which an unconstitutional policy has been unearthed, nor will the City of

14  Spokane be collaterally estopped from making similar defenses against future claims of

15  retaliation by similarly injured plaintiffs."  Id. at 748-49.

16      Similarly, the claim upon which Plaintiff Hart prevailed did not decide an existing

17  government policy was unconstitutional or clarify a murky area of constitutional law.

18  AmeriTitle, Inc., 912 F.Supp.2d at 971-72.  Plaintiff Hart is no longer employed by Defendant

19  TFD and Defendant Hockett no longer sits on the TFD Board.  The external benefit or future

20  deterrent effect of Plaintiff Hart's victory in this action is limited.  Accordingly, the public

21  purpose of the issue raised here weighs in favor of finding that Plaintiff Hart's victory is

22  technical and de minimis.

23      **e.    Factors weigh against Plaintiff Hart recovering attorney fees**

24      Weighing the above factors which strongly indicate that Plaintiff Hart received a de

25  minimis victory, the Court finds that Plaintiff Hart's has not obtained a tangible benefit beyond

26  the nominal damages award and he is not entitled to an award of attorney fees.

27  //

28  //

**C.    Costs**

1.    Plaintiff Oyarzo's Motion for Costs

Plaintiff Oyarzo also seeks reimbursement for costs of $8,332.27 associated with prosecuting his FLSA claim.   Defendant TFD objects to the costs that are redundant and unnecessary.   In determining the costs to be awarded, the Court is to exercise its discretion and only allow taxation of costs for materials that were "necessarily obtained for use in the case" and for an amount that is reasonable.   Berryman v. Hofbauer, 161 F.R.D. 341, 344 (E.D. Mich. 1995).

Plaintiff seeks costs of travel and lodging of $830.52.   In support of this request, Plaintiff submits a lodging receipt totaling $1,661.04.   (ECF No. 253-6.)   This receipt includes a $75.00 pet charge which the Court finds was not "necessarily obtained for use in the case" but was for the convenience of counsel.   Therefore, the costs will be taxed in the amount of $1,586.04. These costs shall be apportioned equally between the three defendants that proceed to trial. Defendant TFD shall be taxed costs of $528.68 for travel and lodging.

Plaintiff Oyarzo seeks costs of $46.75 for postage and $1,971.03 for copying.   The Court shall apportion the total postage cost of $93.50 in the same manner as the attorney fees. However, Plaintiff Oyarzo has not provided any basis upon which the Court can determine the appropriate apportionment of the reduced request for photocopying.   Therefore, the request to award costs for copying shall be denied.   Plaintiff Oyarzo is awarded postage costs of $14.03.[7]

Plaintiff also requests costs for court reporter fees in the event that they are denied on the motion for taxation of costs.   The Court has allowed these fees in the motion for taxation of costs and this request is denied as moot.

Plaintiff seeks $4,832.78 in expert fees for Dr. Mahla.   The total fee for Dr. Mahla was $19,331.10.   Dr. Mahla's depositions were taken while all claims were proceeding in this action and his reports were relevant to all claims that were proceeding at that time.   Therefore, the expert fees shall be apportioned in the same manner as the attorney fees.   Plaintiff Oyarzo is

---

[7] Total postage of $93.50 x 30% = $28.05 in costs attributable to FLSA claim.  Apportioned between Plaintiffs Hart and Oyarzo, the postage costs taxable for Plaintiff Oyarzo are $14.03.

1    awarded costs of $2,899.67 for expert fees.[8]

2                                    IV.

3                    **CONCLUSION AND ORDER**

4        Based on the foregoing, IT IS HEREBY ORDERED that:

5    1.    Plaintiff Oyarzo's motion for attorney fees is GRANTED IN PART, and Plaintiff

6          Oyarzo is awarded attorney fees in the amount of $94,973.50 and costs of

7          $3,442.38; and

8    2.    Plaintiff Hart's renewed motion for attorney fees is DENIED.

9
10   IT IS SO ORDERED.

11   Dated:    **April 30, 2014**

                                    UNITED STATES MAGISTRATE JUDGE

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28   [8] Total fee $19,331.10 x 30 % = $5,799.33 in costs attributable to FLSA claim.  Apportioned between Plaintiffs Hart and Oyarzo, the costs taxable for Plaintiff Oyarzo are $2,899.67.